## CARY *v.* TICE.

Where a married man, whose wife had never resided in this State, purchased a lot of land and resided upon it, which he then mortgaged, his wife not joining therein, and subsequently his wife came to this State and resided with him on the mortgaged premises; *Held* that the character of homestead was never impressed upon the premises until the actual residence of the family thereon, and therefore the homestead exemption cannot be sustained against the mortgage.

The Constitution is inoperative in itself, and looks to legislation to determine how far and in what manner the homestead should be protected from forced sale.

APPEAL from the District Court of the Twelfth Judicial District.

Cary, the respondent, was the owner and holder of a mortgage on

certain real estate in the city of San Francisco, embracing several lots, executed by Tice alone, without his wife, which was sought to be foreclosed, when, by leave of Court, Tice and wife intervened for a homestead in a part of the mortgaged premises. The decision of the Court below was against the claimants of the homestead, and they appeal to this Court to reverse the judgment.

The facts are agreed upon by counsel, and the question involved is purely a question of law. The facts are as follows:

Tice was a married man when he came to California, in 1849, where he has resided ever since. He left his wife in New York. On the 24th of August, 1854, he executed the mortgage set forth in the complaint, to secure the sum of $20,000 to the plaintiff. He had made arrangements to have his wife come to California the preceding June, at which time she was ready and waiting to come, staying temporarily at her brother's, in Peekskill, and had been waiting and expecting to come for several month previously, but, owing to accidents unnecessary to mention, was prevented from coming, and did not arrive here until January, after the mortgage was executed.

Tice purchased the mortgaged premises in 1851, and entered upon them at that time, and occupied the same as his home until his wife arrived, and after her arrival, until this action was brought. Said premises comprised all the real estate Tice owned or possessed in this State.

The cause was tried by the judge, without a jury, and decided against the homestead claim, on the ground that the wife was not actually living in this State when the mortgage was executed by the husband.

Tice and his wife appealed.

*Baldwin and Bowman* for Appellants.

I. The premises in question are homestead premises, dedicated, occupied, and used as such, and were so occupied and used when the mortgage was executed. The sale sought by this action is a *forced sale.* According to our law, there can be no sale of mortgaged premises except by decree of foreclosure and order of sale. A *forced sale* is one which is made under the process of the Court, and in the mode prescribed by law. The Constitution (Art XI, § 15,) imposed on the Legislature the duty of protecting by law, from forced sale, the homestead of all heads of families. The Homestead Act of April, 1851, is an attempt to execute this provision of the Constitution, and in the first section limits the value of the homestead to $5,000, and declares the homestead to that extent, "to be selected by the owner thereof, shall not be subject to forced sale on execution, or any other final process from a Court, for any debt or liability contracted or incurred, after thirty days from the passage of this Act." So far, the intention of the framers of the Constitution is carried out. But, in the second section of the Act, the Legislature lost sight of the Constitution, and, assuming the homestead as a proper subject of mortgage, provided the mode or execution. The two hundred and sixtieth section of the Practice Act

declares " a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale." The Practice Act is older than the Homestead Law.

The exemption, therefore, in the second section, in favor of alienation, by way of mortgage, is wholly ineffectual, because a mortgage is a mere security, an incident of a debt, and to be of any value, must be disposed of by a *forced sale*, procured by legal proceedings, and consummated under a decree of Court by the officers of the law. And this is inhibited by the Constitution. Sampson & Keene *v.* Williamson, 6 Texas R., 102.

The object the Convention framing our Constitution had in view was to secure to all heads of families the homestead property as an immunity to the family, and which should never, by the act or permission of the head, be sold by process of law. But this beneficent intention is wholly defeated, if the head of a family can mortgage it for the purposes of business or speculation, by which the homestead property may become frittered away and wholly lost to the family.

The facts agreed upon show that the mortgaged premises embraced all the real estate Tice owned in the State; that he acquired the property in 1851, and immediately went on it to reside; that he lived on the premises, as his home, ever since, and of course must have lived there when this mortgage was executed, in 1854. It therefore can make no difference how or by whom the mortgage was executed; it was a mere nullity, so far as it embraced the homestead, and is only good for the excess over $5,000.

This Court has frequently held that residence by the family is presumptive evidence of an appropriation of the premises as a homestead, and is notice of the homestead right to all the world. Morse *v.* McCarty, July T., 1856, p. 155; Holden *v.* Pinney, ib., 144; Reynolds *v.* Pixley, April T., 1856.

II. The wife, in contemplation of law, was a resident of this State when the plaintiff's mortgage was executed. The husband was here; had lived here nearly four years before; was doing business here; had selected his domicil, and had sent for his wife, who had made every arrangement to come, and intended to come, months before.

Every person must have a domicil somewhere; and he can only have one domicil at one and the same time. He retains the existing domicil until a new one is acquired. So, by the acquisition of another, the former domicil is relinquished. Abington *v.* North Bridgewater, 23 Pick., 172; 1 Met., 242; 3 ib., 199; 4 Barb. Sup. Ct. R., 518. Tice had acquired his domicil in this State. He lived on the premises. His wife was temporarily staying at her brother's, in the daily expectation of starting to this State to join her husband. On her arrival she went on the premises, and resided there with her husband. The domicil of the husband is the domicil of the wife, when the parties are not living in separation. The residence of the wife follows that of the husband. So held by this Court in Kashaw *v.* Kashaw, 3 Cal. R., 312. So held

by the Supreme Court of Mass., in Green v. Green, 19 Pick., 411, 414, 415.

The words residence and domicil mean the same thing. Abington v. North Bridgewater, 23 Pick., 170; Moore v. Wilkins, X N. H., 452; Hylton v. Brown, 1 Wash. C. C., 299, 314; 3 ib., 555; Lamb v. Smyth, 15 Meeson & Welsby, 433; Crawford v. Wilson, 4 Barb. Sup. R., 585, 522; Isham v. Gibbons, 1 Bradford's Sur. R., 70, 84. See, also, opinion of Moss, Judge, 1 Am. L. Cases, 703; 5 Met., 587; 19 Wend., 11; 1 Met., 245.

*Duer and Lake* for Respondents.

The appellant contends that the mortgaged premises cannot be sold on foreclosure, for the reason that, constituting the homestead of the defendant, Tice, they are protected from such sale by the Constitution of this State.

The Constitution of the State of California nowhere provides that the homestead shall not be sold on execution, or otherwise. Its language is, that "the Legislature *shall protect* by law, from forced sale, a *certain portion* of the homestead, and *other property*, of all heads of families." In this respect the Constitution of California differs essentially from that of Texas, under which the decision relied upon by appellants' counsel was made. That Constitution provides that the "homestead, etc., *shall not be subject* to forced sale for any debt hereafter contracted." There the Constitution gives the protection; here it only provides that the Legislature shall do so. A law is essential; and if the Legislature, in this respect, neglects its constitutional duty, it is not within the province of the judicial branch of the Government to supply the omission.

It is to be observed that it is a *portion* only of the homestead that is to be protected. The Legislature would fulfill its constitutional obligations by protecting a very small portion, either in quantity or in value. Until they declare what portion shall be protected, none can be.

The appellant must, therefore, look to the Act of the Legislature for his protection, and not to the Constitution.

The Legislature declares that the exemption granted shall not extend to " any mortgage, lawfully obtained."

The appellant is compelled to resort to the Act of the Legislature for protection of a homestead *worth five thousand dollars*. But, if he claim under the Act, he must take what the Act gives him. The Act gives one single, indivisible thing—protection to a homestead worth five thousand dollars, from sale on execution, but not from mortgage. The appellant must take the exemption as given, and with the limitation attached to it.

What we have said so far is on the assumption that the meaning of the Constitution is that mortgages, or mortgage sales of the homestead, shall be prohibited.

But a forced sale means an involuntary sale—a sale to which the owner has never consented. A mortgage confers a right to sell the

mortgaged premises, if the debt be not paid; it is properly, indeed, a conditional sale, to which Courts of Equity have attached a right of redemption, after forfeiture.

In truth, the sale on a foreclosure of a mortgage is not required to enforce the rights of the creditor, but is for the benefit of the debtor.

The power of Courts to declare void Acts passed by the Legislature, is exercised with great caution.

In cases affecting real estate, Courts are particularly scrupulous not to disturb, upon theoretical objections, that professional understanding of the law upon which titles rest.    This is one of the few cases to which the maxim applies, *communis error facit jus*.    Brown's Legal Max., 104.

The premises in question were not the homestead of Tice.    " The homestead," says Chief Justice Murray, in Cook v. McChristian, (4 Cal., 26,) " is the dwelling-place of the family, where they permanently reside."   Tice's family, at the time of the execution of the mortgage, had never been in or upon the premises.    Take the case of a man employed at the mines, and occupying a house there, while his wife and family lived in San Francisco.    Would such house be the homestead—the family home ?

The last point made by the appellant scarce requires a serious answer.

The statute provides that where the wife is not a resident of the State, her signature shall not be necessary to a conveyance or mortgage of the homestead.

The counsel contends, upon the authority of the case of Kashaw v. Kashaw, that the residence of the wife follows that of the husband, and that, in contemplation of the law, Mrs. Tice resided in California, although she actually resided elsewhere, and had never been within three thousand miles of the State.

The fiction (for it is often so) that the residence of the wife is that of the husband—like that from which it is derived, that the husband and the wife are one person, and like all other legal fictions—is employed where requisite to promote justice, but never to defeat it; to carry out the intention of the Legislature, but not to thwart it.    It was applied in Kashaw v. Kashaw to give effect to a remedial statute; but the Court refused to apply where the effect would be to defeat the remedy.    Moffett v. Moffett, July T., 1855.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY.    Mr. Justice HEYDENFELDT and Mr. Justice TERRY concurred.

The evidence in this case shows, that Tice, being a married man, came to California in 1849 ; that he purchased a piece of property and resided on it; that in 1854 he mortgaged the same to the plaintiff, and that his wife came to the country after said mortgage was executed, and resided on the premises with her husband up to the time of bringing this suit.    It further appears, that about the time of the execution of the mortgage she was on her way to join her husband in California.

This statement is sufficient upon its face to determine the rights of the parties. The premises never were impressed with the character of a homestead, until actual residence upon them by the family. If it were otherwise, every house in the State, in which, the owner being a married man, had slept a single night, would be *prima facie* a homestead, and there would be no end to the fraud and injustice that would result.

Upon the point that the Legislature can direct in what manner this species of property may be sold, or the tenancy destroyed, we have no doubt. The Constitution is inoperative of itself, and looks to legislation; and in acting upon this subject it was a matter entirely within the discretion of the Legislature to determine how far, and in what manner, the homestead should be protected from forced sale.

Judgment affirmed.