Clark, J.
This case comes up on error from the court of common pleas of this county. An agreed statement of facts was submitted to the court'below. Joseph Ellifritz, a resident of Hillsboro, Ohio, being heavily indebted to divers and sundry persons, both as an individual and as a member of the firm of J. S. Ellifritz & Co., woolen manufacturers, left, his home on South St., Hillsboro, early in February, 1894, on what was supposed to be in the interest of his trade. He left his family, consisting of a wife and four children, in the homestead. There were no mortgage liens on the homestead, nor had the wife encumbered it in any way. The wife has no other home *279 stead. Ellifritz failed to return, and it was discovered upon an examination of the books of a building association, of which he was treasurer, that he was short in his accounts a considerable sum. His whereabouts have been unknown since about February 17, 1894, and. the facts developed indicated he had absconded to evade his creditors, or perhaps escape a criminal prosecution. Certain creditors holding notes upon J. S. Ellifritz, with warrants of attorney attached, after waiting a reasonable time, took judgments against him without process, and levied upon in-lot 399, in Hillsboro, being the lot upon which was the residence and which was then occupied by his family. Mrs. Elizabeth Ellifritz, the wife, filed a demand in writing upon the sheriff for the assignment of a homestead. The property being indivisible so that a homestead could not be set off by metes and bounds, the sheriff and appraisers acted under sec. 5439, Revised Statutes, and put a rental value under said statute, upon said property, and so reported. To set aside said assignment of homestead and report of appraisers, R. M. Dittey, as receiver of The Citizens’ National Bank, filed his motion in the court below, on the grounds,' “ that J. S. Ellifritz was not a resident of the state of Ohio, and that he had abandoned the state and his homestead, and that he and his wife were not living together.” The court below overruled said motion to set aside the assignment of the homestead, as made by the sheriff and appraisers to the wife upon her demand, to which an exception was noted. To reverse this finding of the common pleas, R. M. Dittey, receiver as aforesaid, prosecutes error to this court, and upon the agreed statement of facts, the questions of law arise.
The homestead exemption is intended for the benefit of the wife or family, as the case may be. In construing the statute, its spirit and intent must be considered. The question in the case at bar, is whether our present statute, by its peculiar wording, puts it in the power of the husband to deprive his wife of her right to a home by absenting himself on account of his debts. As against ordinary judgment liens, the statute *280 provides that in case of the refusal or failure of the husband to demand a homestead, “ the wife shall have the right to make the demand therefor, but neither can make such demand if the other has a homestead.” This last clause shows that it was the intent of the law to provide a home. Does the law permit a husband by acts of his to which she is not a party, to deprive her of this home, without providing another place of abode to which she may remove ?
The case in Cincinnati Law Bulletin, Lugauer v. Weisberger et' al., volume 13, page 637, was where a husband and wife were not living together, but apart under a judicial decree, by which she had been awarded alimony and the custody of a minor child. In that ease her claim for allowance of homestead was properly rejected, the court saying :• “ To hold that a wife living apart from her husband under a judicial decree allowing her alimony, is entitled to the allowance, would, in our judgment, be doing violence to both the letter and spirit of the statute.” In that case, the wife's own act worked as a bar to her claim, but clearly, so long as there has been no judicial separation of man and wife, no agreement to separate, no removal to a new abode, and the wife remains in the old home with her family, the mere absence of her husband, for whatever cause, cannot deprive her of the right to a homestead. That would be contrary to both the letter and the spirit of the law.
The husband is the head of the family and may choose the place of living, and the wife must conform thereto. Rev. Stat., sec. 3109.
The only home ever selected is the one now under levy. Whenever Joseph Ellifritz chooses a new abode or place of living for his wife, and requests her removal thereto, a new question would arise that does not appear in this case. The wife has not abandoned her husband, or failed in any of her duties or obligations under the laws of Ohio. No absence, fraud, collusion, or any other act of her husband, without her concurrence, can deprive her of this homestead.
*281 In McComb v. Thompson, 42 Ohio St., p. 139, the court pass on this statute. Judge Follett, says, page 145 : “As between debtor and creditor, the law makes humane provisions, not so much for the debtor himself, as for the benefit of his family, the wife and the children.”
On pages 146 and 147, the court says : “ Thus our laws regard a homestead as a personal privilege which the husband may fail or refuse to claim, when the wife shall have the right to make the demand, but she may or may not exercise the right.”
The following cases are cited: Conley v. Chilcote, 25 Ohio St. 324; Butt v. Green, 29 Ohio St. 667; Chilcote v. Conley, 36 Ohio St. 547; Carpenter v. Warren, 38 Ohio St. 416. See also, Sears et al. v. Hanks et al., 14 Ohio St. 298, 300, 301.
Mark the words, “the wife has the right.” No act of the husband can deprive her of this right, except by his own demand of the homestead. No creditor can deprive her of it. She may or may not exercise it. In the case at bar, Mrs. Ellifritz has exercised her right, and did so promptly and in writing.
The absence of Joseph S. Ellifritz is admitted, and under the laws of Ohio, he is the head of the family and may choose a new homestead without the consent of his wife, but “ Even where this is the law, the desertion by a husband of his family, leaving them in the occupancy of the old homestead is not an abandonment of that homestead.” Freeman on Executions, vol. 1, sec. 248. . “The presumption is that he continues a wanderer without a home until he returns to his duties and his family.” Freeman on Executions, vol. 1, sec. 248. The following cases are cited in foot-note 2 to that section: Moore v. Dunning, 29 Ill. 130; 81 Am. Decisions, 301; Cary v. Tice, 6 Cal. 625; White v. Clark, 36 Ill. 285; Blandly v. Asher, 72 Mo. 35; Locke v. Rowell, 47 N. H. 46.
“ The abandonment of the homestead by a husband cannot prejudice the claim of his wife, where she retains possession.” Freeman on Executions, vol. 1, sec. 248. As long as the *282 other members of the family continue in the occupancy of the homestead, no abandonment can be presumed from the absence of the husband.
If these propositions are true, J. S. Ellifritz and his wife, in the purview of the law and according to its intent and spirit, were at the time of said demand and assignment, living .together, although in bodily presence J. S. Ellifritz was not actually in the house or in the state, so far as known. And it is not a fact that J. S. Ellifritz had abandoned said premises as a homestead before said demand and assignment, it being admitted that his wife and family were left in the occupancy of said premises, and it not having been shown that he had acquired a new homestead to which he has invited the removal of his wife and family, and it is equally clear that J. S. Ellifritz was a resident of Ohio in law and might have demanded the said homestead if personally present, and not doing so, his wife had that right. There is nothing to show that he has taken up a permanent residence or acquired a new homestead in any other state, and upon this it may be said that the current of authorities show that no acts of abandonment operate as against the wife, save only when coupled either with the acquisition of a new homestead to which she removes or upon a showing that her husband has acquired such homestead to which she refuses to remove without good cause.
The very fact that Mrs. Ellifriz and family were left in possession of the old homestead, militates so strongly against the presumption of an abandonment even by Joseph Ellifritz himself, that even if it were shown that he had abandoned the state and never intended to return, Mrs. Ellifritz might still claim the homestead. Under sec. 3108, Revised Statutes : “ Husband and wife contract toward each other obligations of mutual respect, fidelity and support.” Sec. 3115, Rev. Stat., provides: “Neither husband or wife, as such, is answerable for the acts of the other.” Can it be said then, that the humane laws of Ohio intended as a shield for the helpless and innocent and for the protection of dependent *283 families, should be so tortured that an absconding debtor, by-running away to avoid his creditors, or by fraud or collusion, could put it in the power of a creditor to strip his helpless family of a homestead of which they could not have been deprived if he had stayed at home and performed his duty? Will the law allow a creditor to take advantage of the -wrong of the husband'to deprive the wife of this homestead, which even the husband himself could not have done without her consent? How unreasonable, then, it seems to take advantage of the words of the statute “ husband and wife living together,” and to say that the absence of this man Ellifritz has made such a separation in law as to deprive Mrs. Ellifritz of her homestead without her consent. If this is the law, the legislature has made a fearful blunder, and the rights of wives, that were thought to have been so carefully protected, are simply worthless, as all that is necessary is for an insolvent man to run away from home, and by that single act his wife may be turned out of doors. But we can give this statute no such construction, but must construe it according to its purpose and intent, and give it the liberal construction in favor of those for whose benefit it was intended, regardless of the acts of J. S. Ellifritz.
“Who sticks in the letter; sticks in the bark.” Courts are not to be confined to the letter of the law in giving it a construction. A statute must be construed with reference to the subject-matter of it, of its real object and true intent. This is so universal a rule of the courts, thát authorities are unnecessary upon it.
All statutes relating to the rights of husband and wife must be examined together to observe their relative bearing on any given question. Suppose it were granted that Joseph Ellifritz is willfully absent and has no intention of returning, yet under our law this willful absence must continue for three years before the wife can maintain an action for judicial separation. She is powerless until that time expires. In the eye of the law there is no presumption that he may not return un *284 til three years have elapsed, and in the face of his desertion they are still constructively living together. No one- but the wife can apply for this judicial separation, and certainly no creditor by a mere levy on property can deprive a. wife of her right to a homestead, leaving her without remedy. The courts of Ohio have held in divorce cases: (1st.) That the absence must be willful. (2nd.) Must be against the will of the wife. (3rd.) Without her fault. (4th.) And for three years after abandonment of intention to return.
Until a decree of divorce and alimony is obtained, the wife’s rights as to homestead as against creditors, remain. After divorce or alimony is granted, her rights are then fixed by the terms of that decree, as provided by Revised Statutes, sections, 5699, 5700, 5702 and 5703.
Under the rigid rules of the old common law, a married woman was entirely helpless when her husband became a prodigal, a spendthrift, or deserted her. Under the enlightened jurisprudence of Ohio, while carefully guarding the interests of creditors, and fixing by statute the causes for divorce, we have at the same time so provided that it is out of the power of a husband by absconding to leave a wife and children paupers and homeless and penniless, as might have been done at common law. The wife is empowered by law to invoke the power of a court to prevent this, and that is secured to her in both sections 5435, 5439, 5440 and 5441, giving her the right to have a homestead set off (as in 5435), or if indivisible, be put upon rent (as in sec. 5439,) or where charged with liens (as in sec. 5440), an allowance not exceeding $500 out of any surplus above the liens, or where there is no homestead (as in sec. 5441), an allowance not to exceed $500 in lieu thereof. The right of the wife is secured by each section contingent upon the husband’s failure or refusal.
Judge Thurman says, in Adm’r of Tracy v. Adm’r of Card, 2 Ohio St. 432 et sequiter: “ While on the one hand the judiciary should be careful not to make its office of expounding statutes a cloak for the exercise of legislative power, on the *285 other hand, it is equally bound not to stick in the mere letter of a law, but rather to seek for its reason and spirit in the mischief that required a remedy, and the general scope of the legislation designed to effect it.” Hence the ancient maxim that has been styled a fundamental rule of construction, that remedial statutes shall be construed liberally. In 12 Ohio St. 139 and 16 Ohio St. 400, the courts say: “ It is an established rule that in the revision of statutes neither an alteration of phraseology, or the omission or addition of words in the latter statute, shall be held necessarily to alter the construction of the former act. And the court is only warranted in holding the construction of a statute when revised, to be changed, when the intent of the legislature to make such change is clear, or the langnage used in the new act, plainly required such change of construction.” See also Ash v. Ash, 9 Ohio St. 383-387.
Principle and good sense in view of all the facts must determine the case at bar, as well as all other cases where statutory construction is sought, and all mere technical objection, founded on words only, should be swept aside as cob-webs, where they tend to work injustice and wrong. Judge Ranney has well said in Urmey’s Ex’rs v. Wonden, 1 Ohio St. 160: “Wherever the spirit and policy of our legislation leads, the judicial tribunals are bound to follow.”
In Elliott v. Platter, 43 Ohio State Reports, 198-207, where a wife's claims were passed upon. The wife was not living with her husband as his wife, and had for more than three months with her children been residing in another part of the state leaving the husband with, his children by a former marriage, in the homestead. The court held under this state of facts that the burden was upon her to show that her removal was temporary only, with the intention of returning. The case of The Moerlein Brewing Co. v. Westmeier, 4 C. C. Rep. 296—300, was where the wife was living separate from her husband, and not on the property as a homestead. In this case her claim was denied, though her husband did not claim a homestead. The case of Lugauer v. Weisberger, 13 *286 Bulletin, 637, has already been cited. In each case it will be seen it was the act of the wife which was alone considered, and not any act of the husband.
Steele & Hogset, for plaintiff in error.
C. H. Collins, for Mrs. Elizabeth Ellifritz.
There is a case in 32 Ohio St. 443, Jackson v. Reid, where it is stated, “It may well be conceded that a man can not have two homesteads. If he gives up his homestead and moves elsewhere, making the latter residence his home, his right to the former is gone. What the homestead is, is q question of fact. A mere temporary absence will not destroy bis right any more than it will change his domicile. And there may be an enforced absence, under which the homestead right may still exist.
In Jackson v. Reid, Reid took his family with him when he went away, but claimed always an intention of returning. In the Ellifritz' case, the family have never removed from the homestead and the sole question is whether the absence of the husband, either willful or enforced, works an abandonment of the homestead as against the wife. As there is no case in Ohio presenting the precise question under the exact state of facts as agreed upon here, the section 248 in Freeman on Executions becomes important, and our courts must find as other courts have found, that, “ The husband, as the head of the family, has the right to determine its place of residence, and may therefore abandon the homestead without the concurrence of the wife. But the desertion by a husband of his family, leaving them in the occupancy of the homestead, is not an abandonment. The presumption is, that he continues a wanderer without a home until he returns to his duty and his family." To hold otherwise would'be to establish the monstrous doctrine that an indebted or perhaps criminal husband, who “ is dodging around from pillar to post,” to avoid payment of his debts or to keep out of the clutches of the criminal law, can by such acts work a forfeiture of his wife’s right to the home she remains in.
The judgment of the common pleas court is affirmed with costs.