**FARMER BROS. CO., Appellant,**

v.

**HUDDLE ENTERPRISES, INC.,**
**Appellee.**
**No. 20495.**

United States Court of Appeals
Ninth Circuit.

Sept. 14, 1966.

**144**

Edward M. Lynch, Brownell Merrell, Jr., Walker, Wright, Tyler & Ward, Los Angeles, Cal., for appellant.

Ernest R. Utley, Utley & Houck, Los Angeles, Cal., for appellee.

Before JERTBERG and ELY, Circuit Judges, and JAMESON, District Judge.

ELY, Circuit Judge:

The appellant sought authority from the Referee in Bankruptcy to foreclose a deed of trust.[1] Its application was denied, the District Court upheld the Referee's order, and this appeal followed. Our jurisdiction rests upon certain provisions of the Bankruptcy Act. 11 U.S.C. §§ 47, 716.

The deed of trust was executed by Paul S. Cummins and his wife, Ruth, to secure the payment of two promissory notes calling for the payment to appellant of two principal sums of $200,000 and $25,000. The trust deed is junior to one executed in favor of another debtor to secure an original indebtedness of $1,000,000 and is senior to two others. It covers eighteen separate parcels of property on which automobile service station facilities were situated and which, with one exception, are under long-term, income-producing leases to a major retail

1. The deed of trust, while described in the singular, actually consists of three instruments executed in counterpart.

distributor of petroleum products. The income derived from these leases has been applied and, with the approval of the court, is being applied toward the payment of the obligation secured by the first deed of trust. As of October 13, 1964, that obligation had been reduced from its original principal amount of $1,000,000 to a balance of $515,730.41.

The owners of the property, having encountered financial difficulty which arose from their ownership of a chain of restaurants, executed appellant's trust deed on February 1, 1958. About a year later, the debtors made a general assignment for the benefit of creditors to the appellee, a corporation created for the purpose of taking the assignment.[2] The organizers of this corporation were the principal creditors of Mr. and Mrs. Cummins. At the first meeting of the organizers and directors of appellee, an employee of appellant was elected as a director,[3] and thereafter, he or fellow employees who succeeded him regularly attended the directors' meetings.[4]

On February 7, 1961, there was an emergency meeting of appellee's board. A tax sale of its properties had been noticed for the following day. By this time, another of appellant's employees was serving on the board, and he attended the meeting. There was general discussion of the company's financial affairs, as there had been at previous meetings, and on the following morning, an involuntary petition in bankruptcy was filed, a receiver was appointed, and the scheduled tax sale was averted.

The day after the petition was filed, the appellee was adjudicated a bankrupt. A creditors' committee, approved by the Referee, was appointed, and among its members was an employee of appellant who was also then serving as a director on appellee's board. After a proposed Plan of Arrangement under Chapter XI proceedings was rejected on November 22, 1961, a new petition under Chapter XI, with an Amended Plan, was filed. The Amended Plan was approved by the court on February 18, 1964.

The Amended Plan provided that the original $1,000,000 obligation secured by the first trust deed should be satisfied by the assignment of all rental income from the eighteen parcels. It also provided,

"Debtor proposes to pay the interest on claims of junior lien holders at the

---

**2.** The original assignment, on January, 15, 1959, was to Huddle Enterprises, Inc., a Delaware corporation. Its name was changed to Hudcorp, Inc., upon the formation of Huddle Enterprises of California, a California corporation, on February 6, 1959. The name of the California corporation was eventually changed to Huddle Enterprises, Inc., the same name as that of the original assignee, the Delaware corporation. Huddle Enterprises, Inc., a California corporation, succeeded as assignee to the rights of the other corporations and is the present debtor corporation and appellee in this appeal.

**3.** This individual was Frank T. Murphy. He had also been a director of the Delaware corporation to which the assignment for the benefit of creditors had first been made.

**4.** Mr. Murphy attended board meetings of appellee's directors on February 22, 1959, March 25, 1959, April 20, 1959, April 29, 1959, May 5, 1959, May 13, 1959, July 2, 1959, and July 21, 1959. On the date last mentioned, he resigned, and Mr.

James F. Keefe was elected to take his place. Mr. Keefe was employed by the appellant as its assistant secretary and controller. He attended a number of board meetings until he was replaced, sometime between August 24, 1961 and April 30, 1962, by Welborn Demmett, another employee of appellant. Mr. Demmett, also a member of the official creditors' committee, resigned from appellee's board on August 14, 1962, and on October 12, 1962, David D. Heistand, another employee of appellant, was elected to replace him. Mr. Heistand died in December, 1963. There is an inference that he had been absent from meetings held within a few months prior to his death, since Mr. Ronald Frederick St. John, appellant's credit manager, had attended a meeting in March, 1963, and was elected to the board in September, 1963. Mr. St. John also attended meetings of the creditors' committee. Murphy and Keefe had been permitted to attend some board meetings which were held after the times of their resignations.

rate of not to exceed $18,492.00 per annum in equal monthly installments."

Having received no payment of interest under the quoted provision, the appellant, on August 17, 1964, filed its "Petition for Leave to Enforce Trust Deed  *  *."

■■ Following a hearing, the Referee found as a fact that the appellant had been tendered payment of interest under the provision of the Amended Plan and had refused to accept it. There is evidence to support this finding. The chairman of the creditors' committee, also a member and the secretary of appellee's board, testified that at two different times he advised appellant's representatives that interest which had become payable to appellant since the date of confirmation of the Plan could be and would be then paid.[5] It appears that the offer to make the payment was conditioned upon the withdrawal by appellant of its petition for leave to foreclose. The imposition of this condition was clearly reasonable. In the circumstances which existed, the offeror would have been derelict in the exercise of his responsibility had he caused the delinquent interest to be paid without imposing the necessary safeguard against collapse of the whole scheme of rehabilitation. If the petition for leave to foreclose had been improperly or prematurely presented, the imposition of the condition was even more clearly justified. This leads to our consideration of the Referee's determination that appellant was estopped to press for foreclosure "at this time", having actively participated in appellee's financial affairs, including the assignment, not having objected to the Amended Plan, and having misled unsecured creditors to believe that it would abide by the Amended Plan and not take action which would frustrate it.

As he denied the requested leave to foreclose, the Referee, at the same time, ordered retention of jurisdiction, denying the petition without prejudice to appellant's right to renew it if the subsequent developments should appear to jeopardize appellant's security.

■■ "The district court and this court are required to accept the findings of the referee in bankruptcy, unless such findings are clearly erroneous.[6]"[6] In our case, the crucial findings are not clearly erroneous. The record [7] is replete with testimony that appellant's employees actively engaged in efforts designed to inure to the ultimate benefit of all concerned. The appellant knew of the common belief, often expressed in the presence of its representatives, that retention of the income-producing parcels was indispensable to ultimate success and the welfare of the others with whom they were, officially, acting in concert. The appellant itself, joining with four other creditors, contributed to a fund to cover costs incident to the arrangement of a Plan. The employees of the appellant voiced no objection to provisions of the Amended Plan and never made it known to fellow members of appellee's board or of the creditors' committee that their company intended, by foreclosure, to divest the appellee of the property upon which the success of the Plan clearly depended.

5. In its brief the appellee represents that the appellant will not "deny" that it was given a check in the amount of the delinquent interest and now withholds the same without having presented it for payment. In reply, the appellant asserts that it "disputes" appellee's representation. It insists that the record contains no evidence of its receipt of a check. In this, appellant appears to be correct.

6. "6. General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53; Rules 52(a) and 53(e), Federal Rules of Civil Procedure, 28 U.S. C.A.; Lines v. Falstaff Brewing Co., 9 Cir., 233 F.2d 927, 930."

Costello v. Fazio, 256 F.2d 903, 908 (9th Cir. 1958).

See also 28 U.S.C. § 2075.

7. In connection with its petition for review, the appellant did not furnish the District Court with a reporter's transcript of the testimony. Since the transcript is not before us, we must rely upon the contents of the Referee's certificate of review, wherein the testimony is carefully recited.

■ A meeting of the creditors' committee was held on January 10, 1963. An employee of appellant, Mr. Heistand, was present. A proposed Amended Plan of Arrangement under Chapter XI proceedings was discussed. It was contemplated that under this Plan it would be necessary that the creditors advance the sum of $150,000 in cash. As a part of a discussion pertaining to the intention of lien holders, Mr. Heistand stated, according to the testimony of the chairman of the creditors' committee, an attorney, that Farmer Brothers, the appellant, "would go along as it had in the past, * * *." Representatives of Carnation Co. and Arden Farms Co., unsecured creditors, were present. Upon their recommendation, these two creditors each advanced $74,950. There is testimony to support the referee's finding that the sums would not have been advanced except for reliance upon that which was interpreted as a representation that appellant would not attempt foreclosure. The representation was implied from the statement that appellant "would go along as it had in the past" coupled with the fact that it had not "in the past" undertaken to foreclose.[8]

■■ A director of a corporation is a fiduciary. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328 (1876). A bankruptcy court is a court of equity. Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

In the circumstances here, as we see them, it would have been manifestly inequitable to grant the relief which appellant sought. Appellant could not reasonably expect its employees to devote their whole allegiance to it, while permitting them to act in fiduciary capacities with others in an engagement in which the collective obligation to the common enterprise was paramount. If it commanded unyielding loyalty to its own individual welfare, then it should have insisted that its employees abdicate their positions of allegiance to others or, at the very least, that they openly make such declarations as were reasonably necessary to avoid the appearance of deceit. The Referee properly saw that appellant could not intrude into a fiduciary relationship, deceive others by expressed misrepresentation or by silence, and, in equity, be permitted to thwart a court approved Plan which had been conceived and fostered through its participation.

What appellant here sought to do was to foreclose its second trust deed for a debt grown, as of October 1, 1964, to $297,633.83, satisfy the debt secured by the senior trust deed for its reduced amount of $487,630.41, and thus acquire, to the detriment of others and for a total expenditure of only $785,264.24, eighteen parcels of land found by the Referee to have a value of $1,400,000.[9]

8. At a meeting of appellee's board of directors, held on July 16, 1964, appellant's representative, Mr. St. John, was asked if Farmer Bros. Co. intended "to commence foreclosure proceedings on the properties". Mr. St. John replied that "at that time they did not intend to do so, that they had either new counsel or new accountants and were simply investigating the matter and that he would advise Mr. Baird [chairman of the creditors' committee and secretary of the debtor corporation] before any proceedings of that nature would take place". This is the Referee's recitation of a portion of the testimony of Mr. Baird.

The recitation continues,
"He did not advise Mr. Baird before filing the application to foreclose and the order to show cause. No representative of Farmer Bros. Co. at any of these meetings ever stated that Farmer Bros. Co. intended to foreclose."

"No one is permitted to keep silent when he should speak, and thereby mislead another to his injury." Gregg v. Von Phul, 68 U.S. (1 Wall.) 274, 281, 17 L.Ed. 536 (1863).

9. As to the trust deeds junior to appellant's, the third secured a principal indebtedness of $120,000 and the fourth, a principal indebtedness of $17,000. We are told that the third has "been compromised in a manner which will not involve a foreclosure."

**148**

In the light of the history which brought it to the point of seeking judicial assistance to accomplish its objective, the principles of equitable estoppel were justly applied.

Long ago, the Supreme Court wrote,

"The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais*. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice." Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618 (1880).

See also James v. Nelson, 90 F.2d 910, 918 (9th Cir.), cert. denied, 302 U.S. 721, 58 S.Ct. 41, 82 L.Ed. 556 (1939).

Affirmed.