Peter M. ELLIOTT, as Trustee in Bankruptcy for the Estate of Henry H. Herrera, dba U. S. Eagle Fertilizer Co. and Gardenland Nursery, Bankrupt, Appellant,

v.

Henry H. HERRERA, dba U. S. Eagle Fertilizer Co. and Gardenland Nursery, Bankrupt, Appellee.

No. 21306.

United States Court of Appeals Ninth Circuit.

Sept. 12, 1968.

Robert A. Fisher (argued), of Craig, Weller & Laugharn, Los Angeles, Cal., for appellant.

Glushon & Laufer, Van Nuys, Cal., for appellee.

Before KOELSCH and BROWNING, Circuit Judges, and POWELL, District Judge.*

KOELSCH, Circuit Judge.

Henry H. Herrera was adjudicated a bankrupt on an involuntary petition filed March 20, 1964. In due course he was granted, over the trustee's objection, a discharge in bankruptcy. The district court affirmed the order and the trustee has appealed.

Of the several grounds of objection asserted below, those urged in this court are that the bankrupt, within twelve months next preceding the filing of the petition in bankruptcy, transferred and concealed assets with intent to hinder, delay and defraud creditors [11 U.S.C. 32(c) (4)]; that he failed to keep books of account and records [11 U.S.C. 32(c) (2)]; and that he failed to explain satisfactorily losses of assets [11 U.S.C. 32(c) (7)].

---

* Hon. Charles L. Powell, Chief District Judge, Eastern District of Washington, sitting by designation.

The findings of the referee, consisting as they do of the iteration of each ground of objection prefaced by the phrase "It is not true—," afford us no real insight to the referee's view of the material facts. However, to now require some degree of particularization would merely delay decision without serving any useful purpose, for the evidence relevant to at least one of the grounds of objection does not permit a factual determination favorable to the bankrupt and if one were made it would be clearly erroneous. We are referring specifically to the asserted transfer of assets. Until November 1963, Herrera had been the owner of a wholesale fertilizer business known as the U. S. Eagle Fertilizer Co. During that month he sold the assets of U. S. Eagle to Park Green Enterprises, Inc. The only real question was of Herrera's intent in the matter. The circumstantial evidence strongly suggests that the transfer was made pursuant to a deliberate scheme to defraud: Herrera's creditors were clamoring for payment; the transfer was to a corporation only recently organized by his sons who owned all its shares of stock; the sale was with a lease-back under which Herrera remained in possession and the lease was soon forfeited, together with his substantial cash deposit; in addition, Herrera's only explanations with respect to the greater portion of the $25,000 consideration that he received were the vague statements that he had paid unspecified creditors.

Even so, if this was all the evidence touching the issue we would no doubt accept the referee's ultimate finding that Herrera did not intend to hinder, delay or defraud his creditors for, although a referee's factual determinations are not conclusive, a reviewing court is most reluctant to substitute its judgment for that of the referee who has observed the witnesses and heard their testimony.[1]

However, the record before us also contains direct evidence in the form of Herrera's own testimony that the transfer was made to hinder his creditors. Thus, when examined at the first creditors' meeting by Mr. Potts, one of the trustee's attorneys, Herrera admitted that his "purpose was to just lease the equipment back so that I could keep operating and still somebody wouldn't go and take it over. I wanted to pay my obligations"; that the assets were transferred in order to put them in another name to prevent their attachment; and that he cashed and kept on his person, rather than deposited and placed in his bank account, three of the checks amounting to $15,000 which he had received as part payment for the transfer, in order to avoid attachment of the money. He frankly stated: "I couldn't take $25,000, and when I was trying to remedy a situation, and only go and have an attachment. * * *"

The judgment of the district court is reversed and the matter is remanded with directions to enter an order denying the discharge.

[1]. It is not unlikely that the referee failed to apply the correct or any legal test to the evidence in reaching his conclusion for, when orally stating his decision to grant the discharge, he added this most remarkable comment:

"This bankruptcy has been pending about three years. We have had copious amounts of testimony. We have had Mr. Joe Potts in here who looked like he was going to make a veritable lifetime job out of this. Finally, we had to separate Mr. Potts and some of the witnesses and attorneys. So, we are all of the opinion that Mr. Herrera must have been one of the biggest crooks in the world; and, then the books and records are not in too good shape, but I don't think it will do the creditors a bit of good to deny his discharge; and from a practical standpoint, let's don't waste too much time and argument here despite all the evidence that Mr. MacDonald (the trustee's special auditor) clearly made in the exhibits that I struck. So I will allow his discharge."