**Louis S. MIGUEL, Appellant,**

v.

**Edward M. WALSH, Appellee.**

**No. 23946.**

United States Court of Appeals,
Ninth Circuit.

Aug. 19, 1971.

Henry Cohen (argued), Joseph D. Geller, of Anixter & Aronson, Burlingame, Cal., for appellant.

Harvey W. Hoffman, Jr. (argued), San Francisco, Cal., for appellee.

Before ELY, WRIGHT and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

This is an appeal from a judgment of the district court upholding the order of a referee in bankruptcy who determined that the residence of the appellant, by him claimed to be a homestead, was subject to the claims of appellant's creditors.

On September 18, 1967, appellant borrowed $6,400.00 from the Wells Fargo Bank and pledged shares of stock to the bank as security for the loan. On October 30, 1967, part of the pledged stock was released, sold through the bank and the proceeds, in the sum of $3,317.57, applied to the loan. This left a balance of $3,082.43. On November 3, 1967, other pledged stock was released to the appellant under a written agreement with bank,[1] under which appellant agreed to sell the stock and apply the proceeds to his loan. The testimony of the bank official who handled the transaction makes it clear that appellant withdrew the stock on the express condition that he would sell it and turn the proceeds over to the bank. Appellant sold the stock, but did not pay the bank. The proceeds of the sale were used as a further payment on certain real property, title to which was then being held in escrow. The escrow was closed and title to the real property delivered to appellant on December 19, 1967. On December 21, 1967, appellant and his wife filed a Declaration of Homestead on the property, the purchase price of which included the proceeds of the sale of the capital stock released to appellant under the special agreement of November 3, 1967.

In the meantime, the officials of the bank had been pursuing the appellant and attempting to make him conform to the promise contained in the written agreement. All types of excuses were offered by appellant, but nothing was paid on the obligation.

On January 16, 1968, a creditor of appellant filed an action against him. On the 23rd of February, 1968, appellant filed a voluntary petition in bankruptcy. Thereafter, the issues were formed on the validity of the claim of homestead as against the rights of the trustee in bankruptcy. The cause was tried to the referee.

The referee found, as did the lower court, that appellant, at the time he obtained the certificates of stock from the bank on November 3, 1967, had no intention whatsoever of fulfilling his promise to sell the stock and deliver the proceeds to the bank. Moreover, they found that appellant did not deliver the proceeds [$8,028.28], but used them in the purchase of the real property on which he and his wife almost immediately filed a declaration of homestead. They further found that during all of this period, the appellant was insolvent and that he intended to remove his property from the reach of his creditors. Beyond that, they found that appellant was guilty of actionable fraud in that he had no intention of performing his promise to sell the stock and remit the proceeds to the bank.

## ISSUES

The fundamental issues presented to the referee and to the district court, and now before us, are:

I. Was appellant guilty of fraud in procuring the shares of stock from Wells Fargo Bank by representing to the bank that he would sell the stock and return and remit the proceeds to the bank and then refusing to abide by his promise?

1. "To Wells Fargo Bank, Belmont,:
    The proceeds of sale of 100 shares Rheem Mfg. Co. and 142 shares of Ronson Corp. will be remitted to Wells Fargo Bank, Belmont, to be applied to commercial loan #5023.

                     Louis Miguel
    11–3–67          /s/ Louis S. Miguel"

II. Even conceding the existence of fraud and that Wells Fargo could have prosecuted an action, does the trustee in bankruptcy fall heir to the rights of the creditor bank?

## I.

We have carefully read the record, including the transcript of testimony, and agree with the referee and the district court that appellant was guilty of actionable fraud. He was an evasive witness and we have no doubt that he made the promise to remit the proceeds of the stock without any intention of performing that promise. Under California law, such conduct is actionable fraud. California Civil Code §§ 1709, 1710. Wilson v. Rigali & Veselich, 138 Cal.App. 760, 765, 33 P.2d 455, 457 (1934). Even if we were in doubt, we are, as was the court below, required to accept the findings of the referee in bankruptcy, unless they are clearly erroneous. Costello v. Fazio, 256 F.2d 903 (9th Cir. 1958). This is particularly true where the credibility of the witnesses is a factor. Hoppe v. Rittenhouse, 279 F.2d 3 (9th Cir. 1960); Elliott v. Herrera, 401 F.2d 174 (9th Cir. 1968); Farmer Bros. Co. v. Huddle Enterprises, Inc., 366 F.2d 143 (9th Cir. 1966). We have no difficulty in resolving the issue of fraud against the appellant.

## II.

Appellant concedes that if he was guilty of fraud, the Wells Fargo Bank had a right to subject the homestead property to its claim and that such claim would be superior to the homestead exemption. Duhart v. O'Rourke, 99 Cal.App.2d 277, 221 P.2d 767 (1950), compels this concession on the part of the appellant. However, he contends that under the same set of facts, the trustee has no such right. We disagree.

Citing Schoenfeld v. Norberg, 267 Cal.App.2d 496, 72 Cal.Rptr. 924 (1968), appellant claims that the homestead is valid except to the extent that the fraudulently obtained funds can be traced into the homestead. Here, of course, the entire fund obtained by fraud went into the homestead. Beyond that, the money in *Schoenfeld* which went into the homestead was repaid prior to the entry of judgment in the fraud action. There, the court recognized that the homestead stood as one obtained and declared in a lawful manner and in which no tainted money appeared. Moreover, *Schoenfeld* did not involve an application of § 70(c) of the Bankruptcy Act [11 U.S.C. § 110(c)].

In England v. Sanderson, 236 F.2d 641 (9th Cir. 1956), we recognized that where one or more creditors had a right to pursue remedies against homesteaded property, the trustee in bankruptcy succeeded to those rights for the benefit of creditors. Appellant says that *England* is not controlling for the reason that § 110, under which the case was decided, was amended in 1966 and is no longer controlling. He argues that the 1966 amendment curtails the rights and powers of the trustee. We find nothing in the legislative history of the amendment to support appellant's views. For that matter, one eminent authority is of the opposite opinion. We quote from Collier on Bankruptcy, 14th Edition, Vol. 4A, § 70.49, pp. 595–596: "It was said of the precursor of this provision that it conferred upon the trustee 'by force of law' the status of 'the ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings.' If the description of the trustee's position under former § 70c [11 U.S.C. § 110(c)] was apt, *it is even more so under the broader language of the amended § 70c.* \* \* \*" [Emphasis supplied.]

11 U.S.C. § 110(c), provides, among other things, "\* \* \* The trustee shall have as of the date of bankruptcy the rights and powers of: \* \* \* (3)

a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists * * *". Here, the Wells Fargo Bank had a written contract with appellant requiring the appellant to remit to the bank the proceeds of the sale of the shares of the stock. Beyond question, this is the type of contract contemplated by the 1966 amendment to § 110(c) and is the type of a contract under which the creditor could have obtained a lien, in these circumstances, against the fund brought into creation by reason of the sale of the pledged stock.

Under the authority of Duhart v. O'Rourke, *supra*, the appellant's alleged homestead was vulnerable to the claim of Wells Fargo Bank by reason of the November 3rd agreement. Under § 110(c), the appellee is armed with the same rights as the creditor, Wells Fargo Bank. Accordingly, the appellee was authorized to object to and challenge the appellant's claim of homestead in the bankruptcy court. The appellant's entire homestead claim is permeated with his fraud and, on the record before us, we agree with the referee and the district court that he is not entitled to claim the property as exempt.

Other citations and arguments relied upon by the appellant have received our consideration. No useful purpose would be served in discussing the cases, which are not in point, nor in analyzing the arguments which we find without merit. It is sufficient to say that the findings and conclusions of the referee, adopted verbatim by the district court, are supported by the record. Finding no error, the judgment of the lower court must be affirmed.

It is so ordered.