In the Matter of Charles H. and Betty W. SPORLEDER, Bankrupts, Appellants,

v.

Stanley M. SWAINE, Trustee, Appellee.

No. 25233.

United States Court of Appeals, Ninth Circuit.

March 14, 1972.

Herbert B. Finn (argued), Stephen T. Meadow, of Finn, Meadow & Thrasher, Phoeniz, Ariz., for appellants.

John C. King (argued), Richard E. Norling, of Shimmel, Hill & Bishop, Phoenix, Ariz., for appellee.

Before DUNIWAY and TRASK, Circuit Judges, and FERGUSON, District Judge.*

TRASK, Circuit Judge:

The Referee in Bankruptcy ordered the bankrupts to turn over certain assets to the trustee which the bankrupts contended were proceeds from personal earnings after bankruptcy pursuant to a contract of employment. The district court denied review of the referee's or-

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

der and an appeal has been taken to this court. We affirm.

The appellants are husband and wife but the business transaction at issue involves the husband only who is herein sometimes referred to as the bankrupt. He had for many years been engaged in the food brokerage business acting as a sales representative for manufacturers of food and related products. The net income from this individual enterprise had decreased to the extent that in the latter part of 1967 he had to do something "to salvage myself."

In early 1968 the bankrupt and one Ed Ryan entered into a written agreement as of January 1, 1968, which provided in part:

(a) That the bankrupt be paid a salary of $1,500 per month (by Ryan) during the term of the agreement, January 1, 1968 to December 31, 1973, subject to reduction according to a formula if the bankrupt lost any of his accounts. According to formula, if all accounts were lost the bankrupt would receive no payments.

(b) Bankrupt was also to receive ten percent of the net profits of the Ryan brokerage business.

(c) Life insurance policies were to be obtained by both parties in the face amount of $40,000 to fund the payments due bankrupt.

(d) The bankrupt warranted his gross business for 1967 to be in excess of $60,000 and agreed to a reduction in payments according to formula if the annual gross were less.

(e) The bankrupt was to receive a pledge of thirty percent of the stock of any incorporation of Ryan.

(f) Payment to the bankrupt was to continue in the event of his disability or death.

(g) Ryan could terminate the bankrupt at any time by paying the then monthly rate for the balance of the term.

(Finding of Fact Number 9.)

Ryan testified in the bankruptcy proceeding that it was also his understanding that the bankrupt's furniture and fixtures consisting of six or seven desks, two IBM typewriters, a calculator, an adding machine, a safe and other items belonged to him as a part of the transaction.

On the basis of the contract, the testimony and the attendant circumstances the referee found that the arrangement constituted a sale of the E. G. Sporleder Company to Ryan for the sum of $30,000 and an employment contract for the sum of $60,000 payable over the term. (Finding of Fact Number 13.)

The turnover order required the bankrupts to pay to the trustee one-third of all sums received by the bankrupts under the contract from the date of filing the voluntary petition in bankruptcy.

Section 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a) (5), provides that the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition, less exemptions, to all property wherever located including,

" . . . (5) Property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered. . . . "

Obviously, wages or compensation for personal services earned by a bankrupt after adjudication belong to him and not to his trustee. Hudson v. Wylie, 242 F. 2d 435 (9th Cir.), cert. denied, 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957). The order here, however, does not purport to operate on future wages. There was testimony from other persons in the business that food brokerage enterprises depending on continued representation of a manufacturer or dealer could be sold on the basis of gross commissions. It is the portion of the payment represented by this feature of the contract which the referee's order directed be turned over. If the bankrupt does not

retain his representation he loses its value under the contract formula. *See* In re Wright, 157 F. 544 (2d Cir. 1907).

Appellant and appellee both agree that Section 70(a) (5) of the Bankruptcy Act (11 U.S.C. § 110(a) (5)), *supra,* is the statutory provision which controls the disposition of this case. Appellant terms the relationship between the bankrupt and his manufacturers as a "personal service contract" which has no value separate and apart from the bankrupt's continued personal service in maintaining these accounts. He concludes that it is therefore non-assignable and not property or an asset which could pass to the trustee. Appellee contends that it does constitute property within the meaning of the phrase "which . . . he could by any means have transferred" because the bankrupt did in fact transfer it. On this narrowly drawn issue the testimony and the findings support appellee.

There are cases which appear to be contrary to the position which the referee has taken and the district court has affirmed. Most of them on careful analysis may be distinguished upon their facts or upon the findings. Case law may also be cited to support appellee on the same basis. Thus in Board of Trade of City of Chicago v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) the question involved a seat on a stock exchange. It was questionable whether it could be the subject of a levy of execution under state law. Upon that ground the Supreme Court of Illinois had held that it was not property, and the bankrupt relied upon the state law to support his position against the trustee. Rely-ing on an earlier decision of the Court, the Chief Justice said:

" 'It is not certain whether the learned [state] court intended to say that the seat was not property at all, or not property because it could not be seized in execution for debts. If the former, we cannot concur. The facts of this case demonstrate the contrary. If the latter, it does not affect the pending controversy. The power of the appellant to transfer it was sufficient to vest it in his trustee.' " *Id.* at 9, 44 S.Ct. at 234.

Here the facts support the finding that the parties contracted upon the basis of the power of the bankrupt to transfer subject to an agreed formula reduction in the event an account were lost. Similarly, good will when transferred in connection with the business to which it relates, constitutes property. *See* Mutual Life Insurance Co. v. Menin, 115 F.2d 975 (2d Cir. 1940), cert. denied, 313 U.S. 578, 61 S.Ct. 1096, 85 L.Ed. 1536 (1941).[1] The value which the parties may ascribe to such an asset and the continued existence of that value whether good will, franchise or food broker is a matter of business judgment between the parties. It is evident here that this continuing value during the five year period of the contract had received careful consideration.

We are bound to sustain the findings and conclusions of the referee and of the district court unless they are clearly erroneous. Miguel v. Walsh, 447 F.2d 724 (9th Cir. 1971); Costello v. Fazio, 256 F.2d 903, 908 (9th Cir. 1958). We do not find clear error here.

The judgment is affirmed.

---

1. Mutual Life Insurance Co. v. Menin was a case of an involuntary sale of good will as distinguished from the voluntary sale here.