[Civ. No. 24652.   First Dist., Div. Three.   Nov. 20, 1968.]

BRUCE SCHOENFELD et al., Plaintiffs and Respondents, v. J. R. NORBERG, Defendant and Appellant.

Hoge & Warwick, and David R. Warwick for Defendant and Appellant.

Gross, Gross, Rose & Schwartz and Harry M. Gross for Plaintiffs and Respondents.

SALSMAN, J.—This is an appeal from a judgment of the Superior Court of Marin County, restraining the sheriff of that county from selling the homestead of respondents Bruce and Lucille Schoenfeld (hereafter referred to as Schoenfeld), pursuant to a writ of execution issued upon a judgment obtained in San Francisco by appellant J. R. Norberg. Schoenfeld's judgment perpetually enjoined Norberg from any levy upon the homestead property. As will appear, issuance of the injunction was untimely and the judgment must therefore be reversed.

In 1956 Schoenfeld defrauded appellant Norberg of more than $13,000. Norberg sued Schoenfeld in the superior court in San Francisco and obtained a judgment in the total sum of $19,279.59 because of Schoenfeld's fraud. On September 3, 1965 Norberg caused a writ of execution to be issued pursuant to the judgment and levied the writ upon Schoenfeld's homestead in Marin County. The sheriff of Marin County gave notice of sale of the homestead property to be held October 28, 1965.

On October 27, 1965, 54 days after Norberg's writ had been issued, Schoenfeld filed the action which gives rise to this appeal. His purpose was to prevent sale of his homestead by Norberg and the sheriff. On the day the action was filed the court issued a temporary restraining order which of course stayed the sale, and later, after trial, the court issued its permanent injunction against Norberg, perpetually enjoining sale of Schoenfeld's homestead.

There was evidence at trial that only $274.42 of the moneys fraudulently obtained by Schoenfeld from Norberg found their way into the homestead property. Before judgment, Schoenfeld repaid this sum to Norberg.

On appeal, Norberg contends that when funds have been obtained by fraud, and such funds are traced, in whole or in part, to the homestead property, the property loses its exempt character and becomes subject to execution upon any judgment obtained by the party defrauded. Applying this

premise to the facts of this case, Norberg argues that, since $274.42 of the tainted funds were found in the homestead property, the property is stripped of the protective mantle of the homestead, and is bare to his execution. This is not the law.

The broad purpose of the homestead laws is to promote the security of the home, and to place such property beyond the reach of the consequences of the home owner's economic misfortune. The policy is a strong one. It has been declared in our Constitution since statehood (Const. 1849, art XI, § 15; Const. 1879, art. XVII, § 1). The Legislature has enacted comprehensive statutes to carry out the constitutional mandate. (Civ. Code, div. 2, pt. 4, title 5.)

The Legislature has declared that homesteads are exempt from execution, to the extent permitted by law, except where (1) the creditor's judgment has been obtained before the homestead was filed for record; (2) the debt is secured by the liens of artisans, materialmen, laborers and persons of like class; (3) the debt is an encumbrance executed by the homestead claimant, or (4) the debt is secured by an encumbrance executed and recorded before the recording of the homestead. (Civ. Code, § 1241.)

To this catalogue of circumstances under which a homestead is subject to execution sale, the courts have added those cases where money has been obtained from the executing creditor by fraud and used to acquire the homestead property. This rule, based upon fundamental concepts of equity, was first declared in the early case of *Shinn* v. *MacPherson,* 58 Cal. 596. *Shinn* was followed by *Kemp* v. *Enemark,* 194 Cal. 748 [230 P. 441] and *Duhart* v. *O'Rourke,* 99 Cal.App.2d 277 [221 P.2d 767]. In each of these cases, all or substantially all of the fraudulently obtained funds were funneled into the homestead property, for the obvious purpose of retaining illgotten gains by rendering them execution-proof. On their facts the cited cases are obviously correct because they satisfy the elementary rule that one cannot be permitted to profit by his own wrong.

But the cases we have mentioned are not controlling here. In this case, it was established that only $274.42 of Norberg's money went into Schoenfeld's homestead. This, as we have seen, was repaid before judgment. Thus Schoenfeld's homestead stands as one obtained and declared in a lawful manner, in which no tainted money appears. As such it is entitled to the protection of the broad policy underlying all homesteads. If we were to say in this case that, because Norberg's judg-

ment is one based upon fraud, Schoenfeld's homestead is subject to execution sale on Norberg's judgment, we would be adding a new subsection to Civil Code section 1241. It may well be, as appellant impliedly argues, that such should be the rule. But this is not for us to say. The Legislature has established the homestead exemption and may expand or contract it as its wisdom may dictate. The choice is theirs, not ours.

As we have related, the trial court permanently enjoined Norberg from proceeding further against Schoenfeld's homestead. In this respect, the trial court went too far, and its permanent injunction was untimely. Civil Code section 1245 describes the method whereby in proper cases, a judgment creditor may execute upon the homestead property of a debtor. Generally in such cases the creditor must apply to the superior court for the appointment of appraisers to appraise the property, determine the encumbrances against it, and to ascertain whether the value exceeds the homestead exemption or the property may be divided and the homestead preserved. (Civ. Code, §§ 1245-1253.) Section 1245 allows the judgment creditor sixty days after issuance of his writ of execution within which to apply to the court for the appointment of appraisers. Here the court, at Schoenfeld's request, and but 54 days after issuance of Norberg's execution, restrained Norberg from proceeding, and later made its order permanent. Obviously, Norberg, when restrained, still had six days left in which to retrace his steps and follow the statutory outline for the satisfaction of his judgment. That time is still available to him if he chooses to proceed further.

The judgment is reversed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied December 20, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 29, 1969.