[Civ. No. 36073. First Dist., Div. Three. Dec. 22, 1975.]

JOHN TAYLOR et al., Plaintiffs and Respondents, v.
FRANK I. MADIGAN, as Sheriff, etc.,
Defendant and Appellant.

**COUNSEL**

Richard J. Moore, County Counsel, and Ben H. Zuppan, Deputy County Counsel, for Defendant and Appellant.

Clifford C. Sweet, John H. Erickson, Miriam Steinbock, Sally Laidlaw, Daniel M. Luevano, Rosalyn M. Chapman and Richard A. Paez for Plaintiffs and Respondents.

**OPINION**

**CARKEET, J.*—**This appeal involves a primary issue whether the trial court correctly ruled that the execution statutes of this state in conjunc-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

tion with the homestead laws are unconstitutional in that they establish a statutory scheme which deprives homeowners of rights guaranteed them by both the California and United States Constitutions. Also at issue is whether legislation establishing a new statutory scheme satisfies constitutional requirements.

The facts in the case are undisputed, the issues being wholly legal in nature. A statement of facts essential to an understanding of the background of this action follows.

Plaintiffs Taylor purchased their home in Alameda County on March 8, 1961, and resided there since that date with their two minor children. On August 23, 1972, a default judgment was rendered against them and in favor of Central Adjustment Bureau, Inc. (a former defendant herein) in the Municipal Court for Oakland-Piedmont Judicial District, County of Alameda. The judgment creditor recorded the abstract of judgment. Pursuant to a writ of execution the defendant sheriff levied upon the Taylor home and execution sale was scheduled for December 4, 1973. Plaintiffs Taylor were unaware of their right to homestead protection until advised of its existence by their attorneys on December 3, 1973.

Plaintiffs Taylor filed herein their complaint for declaratory and injunctive relief and procured from the Superior Court of Alameda County a temporary restraining order, temporarily enjoining defendant sheriff from conducting the execution sale, and an order to show cause returnable on December 19, 1973.

On December 10, 1973, plaintiffs Taylor and Walter and Ena Reinke, on behalf of themselves and all other taxpayers of Alameda County, filed their first amended complaint for declaratory and injunctive relief, challenging the constitutionality of the California homestead statutes which deny families homestead protection unless a declaration of homestead is recorded before a judgment lien has been created by recordation of an abstract of judgment.

Plaintiffs Reinke purchased real property in Alameda County in 1936, built a home thereon, and have since resided continuously thereon. They were served with summons and complaint on November 4, 1973, and recorded a declaration of homestead November 27, 1973, prior to any entry of judgment, when they accidentally acquired knowledge of applicability of the homestead law to their situation.

On February 22, 1974, the trial court issued its preliminary injunction, enjoining defendant sheriff from (1) selling Taylors' home; and (2) selling any parcel of real property owned by any judgment debtor who has secured an ex parte order from the court enjoining the sale and who has served said order on defendant. It was further ordered that whenever the sheriff was required to serve on a judgment debtor a notice of sale under execution and to post the same notice on the real property to be sold, he should also serve and post a notice informing the debtor of his right to secure protection from forced sale pending final judgment.

The homes of six families, in addition to that of the Taylors, were protected from forced sale in this manner, and these six families were permitted by the trial judge to join as plaintiffs.

The court permitted the California Association of Collectors to submit an amicus curiae brief in support of defendant's position.

On June 13, 1974, the court granted plaintiffs' motion for summary judgment and denied defendant's oral motion for summary judgment. (Defendant Central Adjustment Bureau was dismissed upon plaintiffs' oral motion.) Plaintiffs' summary judgment was granted on the ground that there was no defense to the action and that no triable issue of fact was presented. The trial court's final judgment declared that: "[I]nsofar as the execution statutes, C.C.P. § 681 *et seq.*, in conjunction with the Cal. Civ. Code § 1241(1), authorize sale of a homestead, whether declared or not, pursuant to writ of execution issued on a money judgment, without notice and opportunity to claim the homestead exemption, they are unconstitutional and void."

The judgment further enjoined the sheriff from selling parcels of real property pursuant to a writ of execution on a money judgment unless: "Whenever the Sheriff is hereafter required by C.C.P. §§ 682 and 682.1 to serve on a judgment debtor a notice of levy on real property, he shall serve on the judgment debtor, and also post on the property or leave with an adult residing thereon, a copy of the notice attached hereto as Exhibit A and incorporated herein by reference."[1]

---

[1]Exhibit A provides as follows: "IMPORTANT NOTICE TO THE HOMEOWNER 1. You may be able to protect the real property described in the Notice of Levy from execution and forced sale if you or your spouse are now residing on the property. 2. If you or your spouse wish to prevent the forced sale of this property, a Declaration of Homestead must be recorded, as required by law, within twenty (20) days of the date of serving of this notice. 3. In order to claim this protection, the declarant must set forth in the Declaration of Homestead, in addition to the requirements of California Civil Code

The judgment also enjoined the sheriff from such sale of real property where the notice of levy was served prior to the granting of the February 22, 1974, preliminary injunction, but where such parcels were not yet sold, unless certain conditions are met: "at least twenty (20) days prior to sale, the sheriff shall in the manner prescribed by C.C.P. § 692(3) serve on the judgment debtor, and post on the parcel of real property subject to sale, a copy of the notice attached hereto as Exhibit B and incorporated herein by reference."[2]

The judgment of the trial court also contained the following two paragraphs:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, as to abstracts of money judgments recorded before a declaration of homestead is recorded, the recording of a declaration which includes a statement setting forth the date that the declarant took up residence on the property shall have the same effect, and provide the same protection, as if the declaration had been recorded on the date the declarant took up residence on the property.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, if no declaration is recorded within twenty (20) days after service of either notice provided for by this order and attached hereto as Exhibits A and

---

§ 1237 *et seq.*, the date the declarant took up residence on the property, in substantially the following form: 'The Declarant has resided continuously on this property since (give date).' 4. For your own protection you should seek the advice of an attorney in this matter, and you should do so promptly so that your Declaration of Homestead may be filed within twenty (20) days of the date of the serving of this notice. *If you do not record a homestead declaration within twenty (20) days of the serving of this notice, any right you may have to this homestead protection will be presumed waived.*"

[2]Exhibit B provides as follows: "IMPORTANT NOTICE TO THE HOMEOWNER 1. You are being served with this Notice because of a recent court decision. Read the following information carefully. 2. You may be able to protect from forced sale the real property described in the previously served Notice of Levy if you or your spouse are now residing on the property. 3. If you or your spouse wish to prevent the forced sale of this property, a Declaration of Homestead must be recorded, as required by law, within twenty (20) days of the date of serving of this notice. 4. In order to claim this protection, the declarant must set forth in the Declaration of Homestead, in addition to the requirements of California Civil Code § 1237 *et seq.*, the date the declarant took up residence on the property, in substantially the following form: 'The Declarant has resided continuously on this property since (give date) .' 5. For your own protection you should seek the advice of an attorney in this matter, and you should do so promptly so that your Declaration of Homestead may be filed within twenty (20) days of the date of the serving of this notice. *If you do not record a homestead declaration within twenty (20) days of serving of this notice, any right you have to this homestead protection will be presumed waived.*"

B, the protection provided by this order against abstracts of money judgments previously recorded is presumed waived."

Defendant filed timely notice of appeal. The specific issues raised by this appeal are: (1) Whether the homestead statutes (Civ. Code, § 1237 et seq.) in conjunction with the execution statutes (Code Civ. Proc., § 681 et seq.) violate article XVII, section 1 of the California Constitution? (2) Whether the above statutes in their operation violate the due process clauses of the United States and California Constitutions? (3) Whether the above statutes in their operation violate the equal protection clauses of the United States and California Constitutions? (4) Whether the judgment of the lower court is in conflict with Statutes 1974, chapter 1251, effective July 1, 1975, and if so, whether the new statutory scheme is in violation of the California and United States Constitutions?

The court will discuss these issues in the order in which they are hereinabove enumerated.

I. ■ *Whether the homestead statutes in conjunction with the execution statutes violate article XVII, section 1 of the California Constitution?*

Is the right to exempt a homestead from execution sale a fundamental constitutional right or merely a statutory privilege?

Pertinent to the answer to the foregoing query is the question of whether California's constitutional provision relating to homestead exemption is self-executing?

"Early state constitutions were drafted on the theory that they should outline the broad principles of government, provide for officers and departments, and place certain restrictions upon the various departments for the protection of individual rights, leaving lawmaking to the Legislature. The later tendency is to include a great deal of law.

"As a result of this change in content it has been declared that a constitutional provision will now be presumed to be self-executing, and will be given effect without legislation, *unless it clearly appears* that this was not intended. [Citations.]" (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 38, pp. 3277-3278; italics added.)[3]

---

[3]"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty

A provision may be mandatory without being self-executing. It is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the Legislature to put it into operation. A constitutional provision contemplating and requiring legislation is not self-executing. (16 Am.Jur.2d, Constitutional Law, §§ 93, 94, p. 280.) In other words, it must be regarded as self-executing if the nature and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination and construction of its terms and there is no language indicating that the subject is referred to the Legislature for action (*id.*, § 97, p. 282); and such provisions are inoperative in cases where the object to be accomplished is made to depend in whole or in part on subsequent legislation. Thus, a provision which authorizes, or directs, or impliedly anticipates, action by the Legislature to create exemption of a homestead is *not* self-executing. (16 C.J.S., Constitutional Law, § 51, pp. 152-153.)[4]

If the Constitution provided that a homestead should be exempt from execution, the provision would be self-executing, but the Constitution provides that the *Legislature* shall protect a homestead by law from forced sale, and therefore is not self-executing. (40 Am.Jur.2d, Homesteads, § 6, pp. 119-120.)

Article XVII, section 1 of the California Constitution provides: "The Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families."

Article I, section 28 provides: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

The provisions of article I, section 28 (formerly § 22) relating to the mandatory and prohibitory nature of the provisions of the Constitution apply to all sections of the Constitution alike, and everyone subject to its mandate must comply. (*Santa Clara County* v. *Superior Court* (1949) 33 Cal.2d 552 [203 P.2d 1].)

The word "shall" has been construed as a word of command. "[It is] not permissive or only directory, to be heeded or not by the senate and

imposed may be enforced." (*Chesney* v. *Byram* (1940) 15 Cal.2d 460, 462 [101 P.2d 1106].)

[4]Citing *Noble* v. *Hook* (1864) 24 Cal. 638, which involved a direct frontal attack on the constitutionality of California's exemption statute.

assembly, but mandatory and peremptory, exacting compliance with and obedience to [it], and prohibitory of any action conflicting with [it]." (*Oakland Paving Co.* v. *Hilton* (1886) 69 Cal. 479, 492 [11 P. 3].)

Plaintiffs contend, on the basis of the foregoing authorities, that the language of article XVII, section 1 requires that the Legislature protect the homesteads of all California families, and that it may not place any precondition on the exercise of that right by any head of a family.[5]

An examination into the origin and historical background of this right is necessary in order to properly determine whether the conclusion of the trial court that the exemption statutes are unconstitutional can be sustained.

The California Constitution of 1849 provided in article XI, section 15 as follows: "The Legislature shall protect by law, from forced sale, a certain portion of the homestead and other property of all heads of families."

Article I, section 8 provided that no person shall be "deprived of life, liberty or property without due process of law."

As originally proposed, the constitutional section included specific limitations on the value and size of the homestead. These detailed provisions were eliminated because the framers of the Constitution decided that this was more properly the subject of legislative action due to constantly changing conditions. The constitutional convention debates make clear that the Legislature was entrusted with regulating the size and value of the homestead and establishing procedures for preserving it exempt from execution while permitting the excess value to be sold to satisfy judgment creditors. (Report of the Debates in the Convention of California, on the Formation of the State Constitution, in September and October, 1849 (Browne edit. 1850) pp. 269-271.)[6]

---

[5]It is plaintiffs' position that section 1241, subdivision 1, of the Civil Code, requiring recordation of a declaration of homestead *before* an abstract of judgment is recorded, in order to exempt the homestead from execution rule, is a "trap for the unwary" and protects only the "legally sophisticated and well advised. . . . [T]he legislature has stripped the homestead protection away from the uninformed and unrepresented, . . ."

[6]"Sources of legislative and constitutional intent are numerous. (See generally 3 Pacific L. J. 63; 9 Cal.Western L. Rev. 128; 16 Am.Jur.2d, Constitutional Law § 80 et seq.) Among the permissible aids to construction are the following: (a) Proceedings of the California constitutional convention. [Citations.]" (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 70, p. 3308.)

The Constitution of 1849 was ratified by the people in November 1849, and the first session of the new Legislature commenced on December 15, 1849, and ended on April 22, 1850. (Sen. & Assem. J. (1850 First Sess.) pp. 3, 390, 575, 1289.)

A bill to exempt homesteads was introduced into the Assembly, December 29, 1849 (*id.,* at p. 626); on January12, 1850, two bills covering exemptions were ordered recommitted to the Judiciary Committee with instructions to incorporate both bills into one (*id.,* at p. 652); on January 18, 1850, the new bill passed the Assembly, but not without some considerable feeling against it. (*Id.,* at p. 689.)[7] On March 25, 1850, the Senate tabled the bill. (*Id.,* at p. 244.)

California was admitted to the Union on September 9, 1850, and on January 5, 1851, the second session of the Legislature convened. (Sen. & Assem. J. (1851 Second Sess.) pp. 5, 78.) Senate Bill No. 21 was introduced and passed by the Senate and was referred to the Assembly Judiciary Committee on February 4, 1851. (*Id.,* at p. 1081.) That the bill was controversial and received much discussion and study is evidenced by the report of the Judiciary Committee when it reported the bill to the Assembly on March 28, 1851, and a substitute bill was ordered printed by the Assembly. The chairman's report indicated an understanding of the purposes of such law and that the Legislature recognized article XI, section 15, Constitution of 1849 as a mandate from the people to the Legislature.[8]

---

[7]One Assemblyman offered a resolution, "That the bill be referred back to the Committee, with instructions to report back something containing some degree of common sense and justice, in relation to the Homestead exemption."(Sen. & Assem. J. (1850 First Sess.) p. 684.)

[8]"Mr. Moore, Chairman of the Judiciary Committee, to whom was referred Senate Bill No. 21, 'a Bill to exempt the Homestead and other property from forced sale in certain cases;' also, Assembly Bill No. 53, with the same title, reported, [¶] That, in the opinion of your committee, the effect of such a Bill should not be to repeal all laws for the collection of debts from the individuals benefited by it: but to give a home to the families of the unfortunate, the reckless or improvident, and to protect them in the enjoyment of the necessary comforts of life. Yet it is believed that the enormous exemptions provided for in the Bills referred to your committee, would encourage the speculations of the profligate, while, operating unequally, either of these Bills would give to one debtor the bare means of existence, and to another all the luxuries of wealth. They therefore recommend the indefinite postponement of both these bills. [¶] But aside from a disposition to render obedience to an express mandate of the Constitution, your committee recognise the importance of an exemption law for the benefit of wives and children, who certainly should not be punished either for the crimes or improvidence of husbands or fathers; and further, being actuated by a belief that the passage of an Act *properly guarded,* in relation to this matter, will add to the number of permanent settlements in this State, and increase a class of valuable citizens, they strongly urge upon

On April 4, 1851, the substitute Homestead exemption bill was before the Assembly and amendments to reduce the amount of the exemption to $2,500 and to $1,000 were each defeated; the bill finally passed with a $5,000 exemption. (Sen. & Assem. J., *supra,* at p. 1498.)[9]

After a joint conference with the Senate the bill was reported back by the committee chairman, who recommended its passage, with one amendment, with the following statement to the Assembly: "Your committee would earnestly urge the passage of said Bill, as being the best which under existing circumstances can be presented with any prospect of success. The policy of exempting the Homestead from forced sale, is recognised and approved by the ablest statesmen of the present day, and has been adopted in the Legislature of many of the States of the Union. Of so much importance was it deemed by the framers of the Constitution, that they made it imperative upon the Legislature to enact some provision upon the subject; and your committee believe that early Legislation in the premises providing for a liberal exemption, will produce the most beneficial results, and will build up in our State a sound and prosperous community." (*Id.,* at p. 1584.)

The bill was passed on April 21, 1851, and became Statutes of 1851, chapter 31. It provided that:

"Sec. 1. The Homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, to be selected by the owner thereof, shall not be subject to forced sale on execution or in any other final process from a Court, from any debt or liability contracted or incurred after thirty days from the passage of this act, . . .

"Sec. 2. Such exemption shall not extend to any mechanic's, laborer's, or vendor's lien or to any mortgage, lawfully obtained; . . .

"Sec. 3. Whenever any levy shall be made upon the land or tenements of a householder, whose homestead has not been selected and

---

the House the passage of the *substitute Bill,* herewith presented. With these recommendations, they ask leave to be discharged from the further consideration of the subject. [¶] On motion of Mr. Campbell, the Report and Bill were laid on the table, and the substitute ordered printed. (Sen. & Assem. J. (1851 Second Sess.) p. 1444.)

[9]After passage of the bill one opponent felt so strongly as to introduce a resolution to amend the title of the bill to read "a Bill to prevent the Collection of Debts." Which was, of course, defeated. (*Id.,* at p. 1498.)

set apart, such householder may notify the officer at the time of making such levy with what he regards as his homestead, with a description thereof, and the remainder alone shall be subject to sale under such levy."

The Legislature also adopted "An Act to regulate proceedings in Civil Cases in the Courts of Justice of this State," in the same session (Stats. 1851, ch. 5, p. 51), which provided for the exemption of certain items of personal property and set value limitations thereon, where applicable.

And the same session of the Legislature enacted a statute creating the office of county recorder in each county which also provided what documents were to be recorded or copied in his record books and which included "transcripts of judgment which by law are made liens on real estate," but which did not include declarations for homestead exemptions as documents to be recorded. (Stats. 1851, ch. 25, p. 199.)

Homestead exemptions were in existence in the states for only 10 years when the Constitution of 1849 was adopted.[10] But it was early made manifest that the framers of the Constitution and the courts understood the policy of such a benevolent law, and that it was a matter within the exclusive province of the Legislature under direction of the Constitution. (*Cook* v. *McChristian* (1854) 4 Cal. 23.) The same underlying philosophy and purpose has been recognized and reiterated more recently in *Rich* v. *Ervin* (1948) 86 Cal.App.2d 386, 390-391 [194 P.2d 809] and in *Schoenfeld* v. *Norberg* (1968) 267 Cal.App.2d 496, 498 [72 Cal.Rptr. 924].

The presumption referred to by Witkin[11] that a constitutional provision is presumed to be self-executing is convincingly and overwhelmingly rebutted and overcome in this case by the language of the Constitution itself and by the decisions of our courts.

The constitutional provision as now contained in article XVII, section 1 is without change except for punctuation and it states that the "legislature shall protect, *by law,* from forced sale a *certain portion* of the homestead and *other property* of all *heads of families.*" (Italics added.) "The Constitution *is inoperative of itself, and looks to legislation; . . .*" (*Cary* v. *Tice* (1856) 6 Cal. 625, 630; italics added.)

---

[10] 13 Cal. L. Rev. pages 445-446.
[11] 5 Witkin, Summary of California Law, *supra*, section 38, at pages 3277-3278.

In its decision in 1854 the Supreme Court of this state recognized some statutory omissions and deficiencies and said: "[T]he Statute does not require any record of the selection of the homestead, and points out no mode in which the intention to dedicate property as a homestead shall be made known. In this particular, the Statute is lame, and it will be observed, from reading the whole Act, that the Legislature, by accident has omitted this necessary provision." (*Cook* v. *McChristian, supra,* 4 Cal. at p. 26.)

The Legislature took steps to remedy the omissions mentioned by the courts and to develop a statutory scheme for the preservation of homestead rights by recordation and notice to all, even before any suits were filed or judgments obtained by the homestead claimant. To avail himself of this right, however, the Legislature required the claimant to take certain steps.

In 1860 the Legislature adopted a statute providing that documents copied into the record books of the county recorders should be deemed to impart notice of such documents to persons thereafter dealing with the real property which was the subject of such recorded documents (constructive notice). (Stats. 1860, ch. 366, p. 357.)

In the same session of 1860 the Legislature provided for a method of procedure for the *selection of the homestead,* providing for the execution of a "declaration" for that purpose, who should execute it, what it should contain, and further providing "which declaration shall be signed by the party making the same, and acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded . . ." (Stats. 1860, ch. 320, p. 311.)

The same statute also provided that all persons entitled to homesteads under the earlier act of 1851 shall be entitled to the benefits of the new statute provided, however, that they record a declaration of homestead as required by the new act not later than one year from and after the passage of the new act (April 28, 1860), failing which the homestead "shall be deemed to have been abandoned."

In 1861 the Legislature extended the time for the recording of declarations of homesteads declared under the 1851 statute to April 28, 1862 (Stats. 1861, ch. 230, p. 232); and in 1862 extended it to June 1, 1862 (Stats. 1862, ch. 396, p. 520).

A direct challenge to the constitutionality of the recording requirement was made in *Noble* v. *Hook, supra,* 24 Cal. 638, a case in which the homestead claimant holding a valid homestead under the Act of 1851 failed to record his declaration of homestead before June 1, 1862. The court held the law constitutional and permitted the execution sale, saying:

"The objection that the sixth section of the Act of 1862 is unconstitutional and void, as impairing the obligation of contracts, *or as divesting vested rights,* does not appear to us to be well taken. The constitutional provision that 'the Legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families,' *does not of itself create nor does it vest homestead rights in persons falling within the general description.* The section is simply directory to the Legislature. The Legislature, by the Act of 1851, in the exercise of its discretion, determined the extent and value of the homestead, and the mode and manner of protecting it.

"By the Acts of 1860 and 1862, the mode of protecting homestead rights created under the Act of 1851, and of creating like rights thereafter and of protecting them when acquired, was so varied as to afford more efficient protection to the right, and more efficient protection also to the community as against it." (*Id.* at pp. 639-640; italics added.)[12]

In 1879, a new California Constitution was adopted and article I, section 22 (now § 28) stated: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

In the 1879 version of the Constitution the language relating to homesteads became article XVII, section 1, and is worded identically with the language in article XI, section 15 of the Constitution of 1849, the only change being in punctuation.[13]

From the time of the adoption of the codes in 1872 until the filing of the complaint in the present case the language of sections 1240 and 1241, subdivision 1 of the Civil Code has remained virtually unchanged, viz:

---

[12]See also *Ashley* v. *Olmstead* (1880) 54 Cal. 616, 619, to the same effect.

[13]"The Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families." (Cal. Const. (1879), art. XVII, § 1.)

"The homestead is exempt from execution or forced sale, except as in this Title provided:" (§ 1240.)

"The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

"1. Before the declaration of homestead is recorded, and which, at the time of such recordation, constitute liens upon the premises." (§ 1241, subd. 1.)

Referring to the Constitution of 1879 and the code provisions covering homestead exemptions the Supreme Court of this state in *Southwick v. Davis* (1889) 78 Cal. 504 [21 P. 121] said:

"The preservation of [the] homestead for the family is a marked feature of our law. It is enjoined by the state constitution itself. Of course, it was necessary for the legislature to provide some manner by which one desiring to claim a homestead should make a public declaration of the fact, and designate the particular premises intended to be so claimed." (*Id.,* at pp. 506-507.)

As recognized in *Quackenbush v. Reed* (1894) 102 Cal. 493 [37 P. 755], the Legislature has provided recording of the declaration as one of the things required to be done *"as a condition precedent to the creation of the homestead."* (*Id.,* at p. 499; italics added.)[14]

In *Beaton v. Reid* (1896) 111 Cal. 484 [44 P. 167], the court upheld as valid a recorded declaration of homestead as against a previously obtained valid judgment under which no abstract of judgment had been recorded. That court said: "The subject of homesteads is one wholly committed by the constitution to the legislature, with simply the general mandate that the latter shall protect it by law *from forced sale.* (Const. Art. XVII.) The *extent of the right,* therefore, and the mode of its protection, with the limitation of the rights of creditors therein, are purely matters of legislative prescription, and something with which we have nothing to do but to construe and apply. As aptly suggested in

[14]That the homestead exemption is of purely statutory origin is reaffirmed in *Security Loan v. Kauffman* (1895) 108 Cal. 214, 219 [41 P. 467]; *Tappendorff v. Moranda* (1901) 134 Cal. 419 [66 P. 491]; *Rich v. Ervin, supra,* 86 Cal.App.2d 386, 392; *Schoenfeld v. Norberg, supra,* 267 Cal.App.2d 496. "The protection of a homestead was unknown at common law, California's homestead law, based upon a constitutional provision, is therefore purely statutory." (26 Cal.L.Rev. 241. See also Ogden's Revised Cal. Real Property Law (Cont. Ed. Bar 1974) § 9.4, p. 364.)

*Fitzell* v. *Leaky,* 72 Cal. 477, 483 [14 P. 198], 'With the policy of the law, or the abstract morality of a particular transaction, we have nothing to do, . . .' " (*Id.,* at p. 487; italics added.)

In *Lee* v. *Murphy* (1897) 119 Cal. 364 [51 P. 549, 955], the homestead was held valid even against a purchase money mortgage which was improperly acknowledged and not legally entitled to be recorded. Referring to the constitutional provisions the court said: "Of what the homestead shall consist, and how it shall be protected from forced sale, are matters left with the legislature to determine." (*Id.,* at p. 374.)

The California courts repeatedly recognized that such reasonable conditions precedent had to be met in order for the homeowner to avail himself of the right to a claim of exemption *(Southwick, supra; Quackenbush, supra),* and also recognized that this was an area wholly committed to the Legislature and one in which the courts should not interfere. *(Beaton, supra; Lee, supra.)*

In *Yager* v. *Yager* (1936) 7 Cal.2d 213 [60 P.2d 422, 106 A.L.R. 664], the court upheld a homestead against a judgment which had not become a lien prior to the recording of the declaration of homestead, saying (at p. 219): "The application of the law is general, and it inures equally to the benefit of all persons occupying the marriage status *who have complied with its provisions.*" (Italics added.)

In *Rich* v. *Ervin, supra,* 86 Cal.App.2d 386, the court said:

"A homestead . . . is a right which is provided by the Constitution of California (art. XVII, § 1) that the Legislature may define the nature of a privilege in real property, which is distinct, clear and above the normal right of ownership. The Legislature in this state has provided the rules that govern 'homesteads.' " (*Id.,* at p. 390.)

" '[T]he *homestead is not a technical one in the legal sense, until the required formalities have been complied with.'* (13 Cal.Jur. 413.) '. . . *the provisions relating to the acquisition of a homestead are construed to be mandatory.'* (Emphasis added) [Citation.]" (*Id.* at p. 392, first italics added.)

And as recently as 1968 the court said:

"The broad purpose of the homestead laws is to promote the security of the home, and to place such property beyond the reach of . . . the

home owner's economic misfortune. The policy is a strong one. It has been declared in our constitution since statehood (Const. 1849, art. XI, § 15; Const. 1879, art. XVII, § 1.) *The Legislature has enacted comprehensive statutes to carry out the constitutional mandate.* (Civ. Code, div. 2, pt. 4, title 5.)

"[T]he Legislature has [established] the homestead exemption and may expand or contract it as its wisdom may dictate. The choice is theirs, not ours." (*Schoenfeld* v. *Norberg, supra,* 267 Cal.App.2d at pp. 498, 499; italics added.)

Contrary to the contention of plaintiffs, the Constitution does not require that the homes of all homeowning families in California be exempted from forced sale to satisfy judgment debts. Rather, it provides that "the *Legislature* shall protect, *by law,* from forced sale a certain portion of the homestead and other property of all heads of families." (Cal. Const., art. XVII, § 1.) This constitutional mandate gave to the Legislature a vast discretion and control and the right to impose *reasonable* requirements and regulations as to the manner and method of perfecting the claim of exemption, and the right to exempt the homesteads exists only upon compliance with such requirements. (*Tappendorff* v. *Moranda, supra,* 134 Cal. at p. 421.) If it was the intent of the framers of the Constitution to simply exempt the property of all homeowning families in California from forced sale to satisfy judgment debts, they could simply have stated such blanket exemption and the provision would have been self-executing. But they so worded it that the constitutional provision is inoperative of itself. As adopted the constitutional provision is not "self-executing" as, for example, certain other provisions of the Constitution are.[15]

The right granted by the Legislature in 1860 and ultimately in Civil Code section 1241, subdivision 1, was neither discriminatory nor unreasonably restricted. It not only established a procedure to make the homestead exempt *after* litigation was commenced (but before a judgment abstract was recorded) but enabled *all* homeowners who chose to make a public declaration of homestead to exempt their family homes from execution *even upon debts not yet incurred,* and to give notice of that fact to all, through the recording statutes. Its beneficent provisions were

---

[15]For example, article I, section 19 (formerly art. I, § 14) providing that private property shall not be taken or damaged for public use without just compensation having first been paid to the owner. (*Bacich* v. *Board of Control* (1943) 23 Cal.2d 343 [144 P.2d 818]; *Rose* v. *State* (1942) 19 Cal.2d 713 [123 P.2d 505]; *Vinnicombe* v. *State* (1959) 172 Cal.App.2d 54 [341 P.2d 705].)

available to all homeowners who wished to avail themselves of this unique right.

Referring to article XI, section 15, of the Constitution (1849) the Supreme Court of this state, in *Ashley* v. *Olmstead, supra,* 54 Cal. at page 619 said: "The Legislature, then, in pursuance of that direction, *did* provide for the protection of the homestead; and in proceeding to that end, did enact that a party wishing to be protected *should do* certain things—viz., execute, acknowledge, and have recorded an instrument, declaring that he or she was qualified to select a homestead, that the land was resided upon and claimed as a homestead, that the premises are properly described, and giving their actual cash value. *The Legislature has deemed it proper to require each and every of these things to be necessary.*" [Italics added.]

Placing the burden on the homeowner to prove his entitlement to the property exemption by recording such declaration prior to the recording of an abstract of judgment does not impinge upon the constitutionally protected right nor unduly limit or restrict it. (*Phillips* v. *Bartolomie* (1975) 46 Cal.App.3d 346 [121 Cal.Rptr. 56].)

Even the enforcement of a self-executing constitutionally granted right may be made subject to regulations and requirements by the Legislature, provided that the legislative restriction does not *impair* the right or place an *unreasonable* burden on its exercise. (*Vinnicombe* v. *State, supra,* 172 Cal.App.2d 54.)

We are satisfied from the foregoing authorities that the Legislature has properly carried out the mandate of article XVII, section 1 and that the homestead statutes (Civ. Code, § 1237 et seq.) in conjunction with the execution statutes (Code Civ. Proc., § 681 et seq.) do not violate article XVII, section 1, of the California Constitution.

II. ■ *Do the above statutes in their operation violate the due process clause of the United States Constitution and California Constitution?*

Plaintiffs correctly state that notice is fundamental to due process. This basic proposition was stated in *Lambert* v. *California* (1958) 355 U.S. 225, 228 [2 L.Ed.2d 228, 231, 78 S.Ct. 240]: "Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act."

At the time the complaint and summons were served on plaintiffs Taylor in the Alameda County Municipal Court action, the summons contained a provision reading as follows:

"To the Defendant(s): A civil complaint has been filed by the plaintiff(s) against you. If you wish to defend this lawsuit, you must file in this court a written pleading in response to the complaint (or a written or oral pleading, if a Justice Court) within 30 days after this summons is served on you. Otherwise, your default will [be] entered on application by the plaintiff(s) and *the Court may enter a judgment against you or other relief requested in the complaint.*

"If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your pleading, if any, may be filed on time."[16]

Plaintiffs complain that nowhere does the summons state that a defendant's home might be levied upon and sold as a result of judgment entered against him; that if a defendant believed he owed the money or that fighting the case was useless, he would "reasonably conclude that no further action would be appropriate;" that he would have no reason to suspect that the homestead protection exists and that he must file a declaration before judgment is entered in order to obtain that protection. Plaintiffs further argue that even if the debtor suspected, despite lack of notice, that his home might be exempt, he could reasonably have expected to have the same opportunity to claim his exemption after levy as is given to persons whose wages are attached or whose personal property is levied upon. Adequate notice, then, must inform the defendant not only that the right to exemption exists, but also that unless he acts promptly, he will be deemed to have waived the exemption.

Plaintiffs assert that not only is a defendant entitled to notice of suit so that he might defend on the merits, but also he is entitled to be notified at the time of levy of execution, that he has a homestead right and how he can file a declaration and protect his home from execution sale. (In other words, plaintiffs claim that due process requires a homestead claimant have the same right of notification as to exemption rights and

---

[16]The approved form of notice contained in summonses since January 1, 1975, in addition to the above quoted language from the summons served on plaintiffs, contains the following: "Unless you so respond, your default will be entered upon application of the plaintiff and this court may enter a judgment against you for the relief demanded in the complaint, which could result in garnishment of wages, taking of money or property or other relief requested in the complaint." (Code Civ. Proc., § 412.20.)

opportunity to exercise them as does a judgment debtor who is having exempt personal property or wages levied upon.)

Plaintiffs lean for support on recent cases such as *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983]; *Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600 [40 L.Ed.2d 406, 94 S.Ct. 1895]; *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601 [42 L.Ed.2d 751, 95 S.Ct. 719]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Randone* v. *Appellate Dept.* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]; *Love* v. *Keays* (1971) 6 Cal.3d 339 [98 Cal.Rptr. 811, 491 P.2d 395]; *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661 [105 Cal.Rptr. 785, 504 P.2d 1249].

These cases have no application to the question before this court. All of them dealt with prejudgment proceedings which constituted a taking of the alleged debtor's property *before he had an opportunity to be heard on the underlying claim.*

The plaintiffs apparently concede that they had notice and an opportunity to be heard in the action underlying the judgment which did or could become superior to the subsequently recorded homestead, yet nevertheless they ask this court for a second notice of the existence of the homestead exemption. The question is whether due process requires such a second notice?

Although not in the context of the homestead statutes, the courts have dealt with the constitutional necessity of a post-judgment notice of the existence of property exemptions prior to levy by judgment creditor. The necessity of such notice as it applied to the garnishments of one's wages has been rejected by the United States Supreme Court in *Endicott-Johnson Corp.* v. *Encyclopedia Press* (1924) 266 U.S. 285 [69 L.Ed. 288, 45 S.Ct. 61]. The principles underlying the *Endicott-Johnson Corp.* case were recently applied in *Moya* v. *DeBaca* (D.N.M. 1968) 286 F.Supp. 606.[17]

Recently in California, the Court of Appeal in *Raigoza* v. *Sperl* (1973) 34 Cal.App.3d 560 [110 Cal.Rptr. 296], rejected the constitutional challenge to the fact that California's post-judgment garnishment statutes do not provide for notice and an opportunity to claim an exemption prior to the levy. It should be noted that the *Raigoza* court did not

---

[17]See *Brown* v. *Liberty Loan Corporation of Duval* (M.D.Fla. 1974) 392 F.Supp. 1023, 1036-1037.

consider the constitutional challenge in that case limited to simply a garnishment of wages and the exemptions that may flow therefrom, but rather considered the debtor's challenge as one to the entire execution and exemption procedure in California to the extent that the property is not automatically exempt from execution. (See fn. 9 at p. 567.)[18]

The principles enunciated by the courts in *Endicott-Johnson, supra, Moya, supra,* and *Raigoza, supra,* are equally applicable to plaintiffs' challenge herein. As we have noted, courts have rejected the claim that such a right to notice and an opportunity to perfect the exemption is mandated by the due process clause. The reasoning behind this rejection was well stated by the Supreme Court in *Endicott-Johnson, supra,* at page 288, as follows [69 L.Ed. at p. 292]: "However, the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take 'notice of what will follow,' no further notice being 'necessary to advance justice.' "[19]

The Legislature enacted a statute which harmonized the homestead law with the recording statutes, so that because of the peculiar nature of real property, the homeowner could give notice to all, including present and future creditors, that his home was exempt from execution. For nearly 115 years the limits of the homestead as defined by the Legislature and the conditions precedent to claiming the exemption have been recognized by the courts of this state as a compliance by the Legislature with the constitutional mandate and a

[18]See *Brown* v. *Liberty Loan Corporation, supra.*

[19]See also *Foster* v. *Young* (1916) 172 Cal. 317 [156 P. 476], holding notice of judgment not a condition precedent to levy of execution; *High* v. *Bank of Commerce* (1892) 95 Cal. 386 [30 P. 556], holding no notice required in proceedings supplemental to judgment (p. 387): "So far as the judgment debtor is concerned, he cannot complain; he is a party to the judgment, and is fully aware of the legal effect of it." And see *Crenshaw* v. *Smith* (1946) 74 Cal.App.2d 255 [168 P.2d 752], upholding validity of judgment lien created by recording of abstract prior to recording of valid declaration of homestead. To the same effect, see *Schuler-Knox* v. *Smith* (1943) 62 Cal.App.2d 86 [144 P.2d 47], holding that where an abstract of judgment was recorded subsequent to the filing of a defective declaration of homestead, the declaration did not have the effect of creating a homestead interest in the land superior to the judgment lien.

protection of the homestead from a taking by another without due process of law.

Procedure established by long usage is usually considered sufficient to fulfill the requirements of due process of law. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 290, p. 3580.) "The Fourteenth Amendment, itself a historical product, did not destroy history for the States and substitute mechanical compartments of *law* all exactly alike. If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth amendment to affect it. . . ." (*Jackman* v. *Rosenbaum* (1922) 260 U.S. 22, 31 [67 L.Ed. 107, 112, 43 S.Ct. 9].)

It is significant to note that in amending the statutory procedures for claiming the exemption of a home from execution, effective July 1, 1975,[20] the Legislature, while requiring the levying officer to notify the judgment debtor of his right of exempting his home from execution and the steps necessary to claim it (Code Civ. Proc., § 682b), excluded from the operation of the new statute (Code Civ. Proc., § 690.235) property on which the judgment debtor has "an existing declared homestead," and refused to repeal the long-standing procedure of recording a declaration of homestead in the manner already existent in California (under Civ. Code, §§ 1263, 1241, subd. 1), thereby reaffirming the Legislature's belief that the alternative century-old procedure also constituted due process of law.[21]

In their brief filed herein plaintiffs assert:

"Not only is there an essential property interest in protecting the homestead from forced sale, there is also a constitutional right, under Article XVII, section 1, to exempt the home from forced sale. Under the present homestead statutes, the homeowner is deemed to have waived his constitutional right if he has not filed a timely declaration. In effect, the statutes have created a conclusive presumption in favor of waiver.

"This presumption must fall, however, before the well-established presumption against waiver of constitutional rights. *Johnson* v. *Zerbst,* 304 U.S. 458, 462-5 (1937) [82 L.Ed. 1461, 1465-1467, 58 S.Ct. 1019, 146 A.L.R. 357]; *Aetna Ins. Co.* v. *Kennedy,* 301 U.S. 389 (1937) [81 L.Ed.

---

[20]Statutes 1973-1974, chapter 1251.

[21]Under chapter 1251, Statutes 1973-1974, the homestead procedures and the newly created exemption procedures are expressly made mutually exclusive by section 2.5 of the chapter.

1177, 57 S.Ct. 809]; *Blair* v. *Pitchess,* 5 Cal.3d at 274 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]."

The authorities cited are, of course, not applicable to the facts of this case. Plaintiffs' contentions assume that the right involved is a fundamental vested constitutional right. As indicated by the cases cited and quoted earlier in this decision, it is not a basic right, but is a right which is existent and available only upon the property owner filing the required declaration. Until he does, no right has vested in him. The Constitution did not say that the debtor's homestead was exempt from execution. Rather it said that the Legislature should provide a means for the property owner to be able to claim the protection of such exemption.

For the same reasons plaintiffs' contentions that Civil Code section 1241, subdivision 1, creates an unconstitutional irrebuttable presumption are not sound. Furthermore, any presumption one might read into the statute is *not* a presumption that the nondeclarant is not qualified for the homestead protection, but rather, a presumption that he has chosen not to avail himself of such right and to waive the same, whatever his reasons might be.

Plaintiffs also contend that Civil Code, section 1241, subdivision 1, has no real or substantial relationship to the object sought to be obtained by the homestead statutes and, therefore, violates due process of law.

The purpose of the homestead law has hereinbefore been elaborately stated. The Legislature in order to assure the protection contemplated provided a method which enabled a property owner, upon acquiring an interest in real property, coupled with occupation thereof, to *immediately* protect himself and his family from execution sale by meeting the reasonable conditions imposed by the Legislature. He was not compelled to wait until after judgment and actual levy of execution to claim such exemption, as is the case of other exemption claims. Rather, contemporaneously with the recording of his indicia of ownership document, or any time thereafter, he could record a declaration and give notice to all, including his creditors, that his property was occupied as a home and not subject to execution sale—a unique right made available *only* for a real property owner occupying land as a home.

For the foregoing reasons this court holds that the homestead statutes of this state in conjunction with the execution statutes do *not* violate the due process clauses of the United States and California Constitutions.

III. *Do the homestead statutes in conjunction with the execution statutes violate the equal protection clauses of the United States and California Constitutions?*

The constitutional provisions involved in this discussion are the following:

"[N]or shall any state . . . deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., Amend. XIV, § 1.)

"(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws.

"(b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked." (Cal. Const., art. I, § 7 [formerly § 21].)

Plaintiffs claim that the statutory scheme violates equal protection because (1) the three distinct levels of discriminatory classification in the scheme have no relation to its purpose; (2) the discrimination created by Civil Code section 1241, subdivision 1, abridges the constitutional right to homestead protection without a compelling state interest; and/or (3) there is no realistic state purpose justifying said discrimination.

The so-called three distinct levels of classification are claimed by plaintiffs to be the differentiation in treatment of homesteads under Civil Code, section 1241, subdivision 1; probate homesteads under Probate Code section 660 et seq.; and the more recently enacted exemption for mobile homeowners under Code of Civil Procedure section 690.3. It is argued that since the owner of a mobile home must be notified by the sheriff at the time of levy of execution of his right to claim an exemption from execution sale and an opportunity to do so, the owners of mobile homes are in fact provided greater protection than other families under Civil Code section 1241, subdivision 1, who received no such notice and lose their exemption rights if a judgment lien is recorded prior to the recording of a declaration of homestead. Likewise, plaintiffs contend the beneficiaries under a probate homestead receive greater protection because upon request the court is required to establish a homestead for the surviving spouse even though the head of the family neglected or refused to do so and regardless of whether or not the surviving spouse is aware of and claims the protection. Plaintiffs *contend all these families*

are indistinguishable and there is therefore no constitutionally valid grounds for these "three distinct levels of classification or discrimination."

The objective of the probate homestead statutes is protection of the family, as a social unit in the home, against demands of creditors and heirs, against the family's own improvidence. (20 Cal.Jur.2d, Executors and Administrators, § 374, p. 574.) There are a number of basic differences which indicate that the rights created here are considerably different from those created by the statutory homestead procedures, e.g., the court may put a time limit on the duration of the homestead (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 516, p. 5934); the court is not limited to the property actually occupied by the family at the time of decedent's death, but may select it out of any of the estate property suitable for residence purposes, and it may be used for other purposes as well (7 Witkin, *supra*, § 514, at pp. 5933-5934); and the value is left to the discretion of the court with no monetary limit, provided the property is the bona fide residence of the family. (*Id.,* at p. 5933.) It will thus be seen that there is a legislative policy of even greater protection for those who have lost the head of their family and, therefore, are in a more precarious position than those families in which the head of the family is still in the home.

A historical look recalls that at the time of the original constitutional provision there were no mobile or transient "homes"; that a homestead was the real property and building upon it occupied by the family for its abode and residence; that after an unsuccessful attempt to statutorily provide the method and time of claiming the homestead exemption in 1851, the Legislature, beginning in 1860, concluded that since real property was a unique commodity and a method was provided for recording rights herein as notice to the world, a condition precedent to the unique right of exemption which would be granted to homeowners was that they would be permitted to claim their rights of homestead exemption immediately upon occupying their property and that strict compliance would be required with the terms of the statute in order to obtain this right, such as averment as to occupancy, status as head of a family, and a statement of actual value. While no time limit would be required in filing such declaration, it was made subordinate to mechanic's liens, vendor's liens, mortgage liens, and also to those of judgment creditors if the latter were recorded prior to the recording of the declaration of homestead. Absent the recording of such declaration, no right of exemption vested in the homeowner. In other words, it was the

homeowner's prerogative as to whether he wanted to comply with the conditions precedent and procure such right, or not comply and make no claim to the right of exemption.

Because there were cases in which the head of the family might choose not to file such declaration, for whatever reason, and thus subject his family to the loss of their home, if he died without having made such declaration, the court was empowered to make a declaration of homestead for and on behalf of the family, with the different characteristics noted hereinabove.

Many years later families began occupying mobile homes as their places of residence and the need arose for protecting those families against execution sale of such structures. And as prophesied at the 1849 Constitutional Convention,[22] the Legislature began in 1949 to create exemptions for house trailers (mobile homes);[23] and from time to time increased the amount of exemptions thereon as they increased the exemptions under the Civil Code homestead provisions.[24] The Legisla-

---

[22]"I think that the majority of the [convention] agree that a homestead should be free from sale on execution from a debt; and as we are changing year after year in this new State, as the value of the property is changing, it may be necessary year after year for the Legislature to amend the acts of the previous year. Each Legislature will, or ought to know, more than its predecessors; it is to be presumed of course that experience will be gained by future Legislatures; and I think we had better leave the subject open to them. Simply direct them to preserve a certain portion of the homestead." (Report of the Constitutional Debates (Browne edit.), *supra*, quoting Mr. Sherwood, at p. 217.)

[23]Section 690.24, Code of Civil Procedure (now § 690.3).

| [24] HOMESTEAD Civil Code section 1260 | | TRAILER HOUSE OR MOBILE HOME Code of Civil Procedure section 690.24 | |
|---|---|---|---|
| Head of Family | $ 5,000 | 1949 | $ 500 |
| Others | 1,000 | | |
| | | Stats. 1970, ch. 1523 | 5,000 |
| Stats. 1945, ch. 789 | 6,000 | | |
| | 2,000 | Stats. 1972, ch. 418 | 9,500 |
| Stats. 1949, ch. 357 | 7,500 | Stats. 1973, ch. 787 | 15,000 |
| | 3,000 | | |
| Stats. 1953, ch. 943 | 12,500 | | |
| | 5,000 | | |
| Stats. 1963, ch. 1288 | 15,000 | | |
| | 7,500 | | |
| Stats. 1970, ch. 319 | | | |
| Head of Family | 20,000 | | |
| Persons over 65 years | 20,000 | | |
| Others | 10,000 | | |

ture continued, however, to recognize that there were certain differences between the conventional homestead and the mobile home dwelling. For example, in the conventional homestead the claimant was required to have an ownership interest in the land upon which the dwelling is built; he was required to be the "head of a family" in order to qualify for the maximum; beginning with 1970 persons over 65 could claim the maximum exemption regardless of family status; real property sold under execution sale is subject to a right of redemption within a year of sale (Code Civ. Proc., § 702) personal property is not; real property titles are required to be recorded to protect ownership, personal property is not; and the real property owner is subject to a greater tax burden and liable for special assessments which the mobile homeowner generally escapes. Recognizing such differences as the increased burden on the conventional homeowner and the permanent nature of the structure as compared to the mobility of the mobile home occupant, the Legislature has continued to maintain a differential in the amount of exemption allowable and continued to require head of family status for the conventional homeowner to claim the maximum (or be over 65 years of age) neither of which qualification is required for the mobile homeowner to claim exemption.

The differences in the three types of homesteads therefore immediately become apparent. There is nothing unreasonable about requiring a person desiring the protection of a homestead during his lifetime to take affirmative action, such as recording a declaration, to obtain the homestead when he determines his economic situation is such that he wants this protection. Nor is it illogical, when death occurs without the head of the family having declared a homestead, to statutorily require of the probate court that it create a probate homestead for the protection of the surviving spouse and children.

As for plaintiffs' contention that Civil Code section 1261, subdivision 1, unconstitutionally distinguishes between families whose head of household has filed a timely declaration and those whose head of household has not, the plaintiffs themselves set forth the purpose of the required filing. The required filing is necessary to distinguish between those who come within the definition of "head of family" as set forth in Civil Code section 1261, and who additionally have a proper homestead to protect as opposed to those who either do not come within the definition of "head of family" or do not have real property that might properly be homesteaded. In other words, as the plaintiffs themselves state, the purpose of this section is to distinguish between the families that are qualified for the homestead protection and those that are not.

This distinction in classification would violate the equal protection clause only if the distinction results in a legislative classification which is arbitrary and unreasonable. In determining this issue, both state and federal courts must choose between two possible tests. ■ The first is the basic and conventional standard for reviewing economic and social welfare legislation.

It "invests legislation involving such differentiated treatment with a presumption of constitutionality and 'requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' " (*D'Amico* v. *Board of Medical Examiners* (1970) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].) "Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.*" (*Id.,* at p. 17.) But "A more stringent test is applied, however, in cases involving 'suspect classification' or touching on 'fundamental interests.' " (*Id.,* at p. 17.) Under the strict scrutiny test "applied in such cases *the state* bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." (*Id.* at p. 17.)

■ The right of the family of a debtor to be secure in its home and protected against creditors, irrespective of the legitimate financial obligations of the debtor is not a fundamental right "explicitly or implicitly guaranteed by the Constitution." (*San Antonio School District* v. *Rodriguez* (1972) 411 U.S. 1, 33-34 [36 L.Ed.2d 16, 42-44, 93 S.Ct. 1278].) Rather, as has been exhaustively pointed out hereinabove, the right involved is a statutory right, subject to the reasonable conditions precedent established by the Legislature under constitutional authorization. As has been stated, "the Constitution does not provide judicial remedies for every social and economic ill." (*San Antonio School District* v. *Rodriguez, supra,* at p. 32 [36 L.Ed.2d at p. 42].) California has adopted the *Rodriguez* test. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 18.)

Plaintiffs argue in their brief on appeal that, "the constitutional right to the homestead protection is intertwined with 'sensitive and fundamental personal rights'—the preservation and maintenance of the family unit—and therefore only a compelling state interest may be permitted to impinge on it." There follows an eloquent and emotional argument including the contention that the present law provides a windfall for the creditor who gets his judgment lien on record before any homestead

declaration is filed, which windfall results because of the "ignorance, poverty, or lack of sophistication of the head of the household." But the statute does not discriminate against the "poor." Those assertedly disadvantaged are a class which "cannot be identified or defined in customary equal protection terms." (*San Antonio School District* v. *Rodriguez, supra,* 411 U.S. at p. 19 [36 L.Ed.2d at p. 34].)

It is clear that the statute does not discriminate against any race, sex or the "poor." Persons affluent enough and informed enough to purchase conventional homes and to be aware of the necessity of recording their documents of title in order to protect their claims of ownership against innocent purchasers for value may be reasonably assumed by the Legislature to have sufficient sources of information to know of their rights to protect such homes from levy of execution by judgment creditors.

The strict standard being inapplicable, we must determine whether there is any rational relationship between the statute and some legitimate state objective. Under this test, "The legislature is presumed to have acted constitutionally, and statutory classifications may be set aside only if no ground can be conceived to justify them, . . ." (*Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 62 [115 Cal.Rptr. 247, 524 P.2d 375].) There is no legislative declaration of one purpose of the code sections, but it seems reasonably clear that the purpose is to give to debtors protection from having their homes sold under execution. In accomplishing this the statutes recognize the fundamental legally established differences between real and personal property, as well as the differences between the families of live heads of household and deceased ones. The statutes obviously meet the test of mere rationality.

We conclude that the homestead statutes in conjunction with the execution statutes do not violate the equal protection clauses of the United States and the California Constitutions.

IV. *Is the judgment of the lower court in conflict with Statutes 1974, chapter 1251, effective July 1, 1975, and if so, is the new statutory scheme in violation of the California and United States Constitutions?*

On September 23, 1974, chapter 1251 of the 1974 Statutes was approved and filed, effective July 1, 1975. This chapter amended Code of Civil Procedure, sections 683, 690.50 and 690.52, and added sections

682b and 690.235, having, in sum, the following effect: It provides for exemption from execution of the dwelling house in which the debtor or his family reside, to the same extent and in the same amount as the debtor or his spouse could select as a homestead under the declared homestead statutes. (Code Civ. Proc., § 690.235.) It provides that said exemption shall not apply to a judgment recorded prior to acquisition of the property or commencement of residence, whichever occurs last. (Code Civ. Proc., § 690.235, subd. (b).) It provides that each application for a writ of execution against real property containing a dwelling house shall be accompanied by a *notice* to the homeowner specifying how he may protect his home from execution. (Code Civ. Proc., § 682b.) It provides, "Nothing in this act shall be construed to alter, change, or modify the rights of any lienholder or encumberance vested prior to the operative date of this act [July 1, 1975]." (Stats. 1974, ch. 1251, §§ 6, 8.)

Defendant attacks the order from which this appeal is taken as being in conflict with chapter 1251, which, he asserts, was properly enacted under the Legislature's discretion. Plaintiffs argue that the new statutes permit the continued forced sale of homes, in violation of their constitutional rights. Under the circumstances, these issues are properly raised for the first time on appeal. (6 Witkin, Cal.Procedure (2d ed. 1971) Appeal, § 222, p. 4212.)

Defendant complains that the order of the lower court is inconsistent with chapter 1251. The court required that whenever the sheriff is required to serve on a judgment debtor a notice of levy on real property, he shall serve the debtor and post on the property or leave with an adult residing thereon a notice that the home may be protected from forced sale by the filing of a Declaration of Homestead within 20 days, and that if the declaration is not so filed, the homestead protection will be deemed waived.

Chapter 1251, on the other hand, gives the homeowner notice of a right of exemption from execution of the dwelling house (§ 682b), not of a right to declare a homestead. (The homestead procedures and the exemption procedures are expressly made mutually exclusive by § 2.5 of the chapter.) The new statute does not protect any judgment debtor whose home was levied on before July 1, 1975. Under defendant's reading, it does not protect a judgment debtor whose home was levied on after July 1, 1975, pursuant to an abstract of judgment filed before July 1, 1975, but does take precedence over an abstract of judgment upon which judgment execution is levied which was recorded after July 1, 1975.

Appellants contend that the exemption procedure of chapter 1251 was intended by the Legislature to apply to abstracts of judgment recorded prior to July 1, 1975. .

And section 2.5 of the new statute bars any judgment debtor who files a declaration of homestead after an abstract of judgment is recorded from using the claim of exemption procedure to prevent forced sale of his home pursuant to that prior abstract, even when the abstract was filed after July 1, 1975.

Both parties seem to agree that there is a conflict between the trial court's judgment and the new statute and certainly if both were in effect a judgment debtor would be immediately confused at receiving the two notices.

However, the extent of the conflict between the trial court's order and the new statute need not be defined here, because the trial court's order cannot be sustained for the reasons hereinabove stated.

Judgment entered by the trial court is hereby reversed and the injunction ordered dissolved. Appellant is awarded his costs on appeal.

Brown (H. C.), Acting P. J., and Scott, J., concurred.

A petition for a rehearing was denied January 21, 1976, and respondents' petition for a hearing by the Supreme Court was denied March 3, 1976. Richardson; J., was of the opinion that the petition should be granted.